**DIXIE FURNITURE COMPANY,**
Plaintiff,

v.

**CENTRAL SURETY & INSURANCE COMPANY, Defendant.**

**Civ. A. No. 636.**

United States District Court
E. D. Arkansas, E. D.

March 25, 1959.

W. G. Dinning, Jr. of Dinning & Dinning, Helena, Ark., for plaintiff.

Robert S. Lindsey of Wright, Harrison, Lindsey & Upton, Little Rock, Ark., for defendant.

HENLEY, District Judge.

This is an action brought by plaintiff, an Arkansas corporation, upon a policy of liability insurance issued by the defendant, a foreign insurance company, on or about December 22, 1952, and covering the period from that date until De-

cember 22, 1953. The amount in controversy exceeds the jurisdictional minimum. The case has been submitted upon the pleadings, a copy of the policy in suit, an agreed statement of facts, and written briefs.

The plaintiff is engaged in the mercantile business and sells furniture and appliances, including appliances fueled by butane gas. Its principal place of business is at Helena, but it maintains stores at Marvell, Brinkley and Elaine, all within the Eastern Division of the Eastern District of Arkansas. In the course of its business the plaintiff sells furniture and appliances on credit and, naturally, it is called upon, from time to time, to repossess items that have not been paid for.

The printed policy before the court offered protection from liability arising from a number of types of hazards, grouped in the policy in the following separate "divisions", namely: Division 1—"Premises-Operations". Division 2—"Elevators". Division 3—"Products". Division 4—"Contractual". Division 5—"New Construction Operations". The coverage actually purchased by the plaintiff was limited to hazards included in the "Premises-Operations" division just mentioned, and no coverage was acquired with respect to hazards included in any of the other policy divisions. In that connection the policy provided that the insurance afforded "was only with respect to such and so many of the Coverages and Divisions thereunder as are indicated by specific premium charge or charges". It was further provided that the policy limits were those shown thereon, and that the liability of the company was "subject to all of the terms of the policy having reference thereto". The declarations in the policy described the "premises" of the insured as being its stores in the four localities previously mentioned; and the policy limits were $25,000 for personal injuries to any one

person, and $50,000 for personal injuries arising from any one accident. There was no property damage coverage.

The "premises-operations" hazards insured against were defined as follows: "The ownership, maintenance or use, for the purposes stated in the declarations, of the premises or property, and all operations during the policy period which are necessary or incidental to such purposes, including pick-up and delivery * * * ". Other pertinent provisions of the policy will be hereinafter set forth.

After the issuance of the policy and while it was in full force and effect, one of the employees of the plaintiff's store at Brinkley had occasion to repossess a butane stove which had been installed in the residence of the purchaser and which had not been paid for. In the course of the repossession said employee negligently failed to put a cap on the intake pipe leading into the house from the out-door butane tank, although he did turn off the tank. Some days later when new occupants came to the house and undertook to test the hot water system therein, an explosion occurred due to the negligence of the plaintiff's employee in failing to cap the pipe and two persons were injured. Those persons subsequently filed suit against the plaintiff in the Circuit Court of Monroe County, Arkansas, and obtained judgment against it, which judgment was subsequently affirmed by the Supreme Court of Arkansas. Dixie Furniture Company v. Deason, 226 Ark. 742, 293 S.W.2d 706 [1]. Thereafter the plaintiff paid this judgment, and brought suit on the policy.

Although the policy contained standard provisions requiring the insured to give timely notice of any accident with respect to which coverage was asserted, and to furnish the defendant with all suit papers should litigation be commenced, and although the defendant was obligated to defend any suit brought against

---

[1]. It was the plaintiff's position in the Circuit Court that its employee had not disconnected the stove from the pipe and had nothing to do with the recapping thereof. The jury, however, found against the plaintiff's contentions, and the determination of that body is conclusive upon the parties here.

the insured, and had the right to settle claims made against the latter, it is undisputed that the plaintiff never gave any notice of any kind to the defendant until after the injured persons had filed suit and had obtained the judgment that has been mentioned. It was then, and then only, that the plaintiff made a claim upon the defendant.

The defendant received notice of the plaintiff's claim on December 15, 1955. On January 10, 1956, Mr. L. T. McSpadden, the defendant's claims manager at Little Rock, wrote the plaintiff as follows:

"When we first received notice of this loss on December 15, 1955, we made such investigation as was necessary for our Home Office to pass on the question of coverage.

"Due to the unusual circumstances involved in this case, we felt that this was a matter which should be considered by the company. There were two questions which came to the writer's mind. First, of all, whether the claim against the Dixie Furniture Company was not actually a completed operations claim as defined by our policy. Secondly, whether the failure to report the matter until after the case had been tried might be considered a violation of such magnitude as to remove the insured from any coverage afforded.

"After this matter was referred to the home office, the writer talked with the home office claim department by telephone and was orally advised that they considered this a completed operations claim which would fall within the products sections of the policy. Since the policy which we had on the Dixie Furniture Company at the time of the accident does not carry products coverage, they feel that this incident did not constitute a valid claim against the policy.

"We will probably receive a formal notification of this from the company in the next few days at which time you will be advised."

On or about May 21, 1956, the attorneys for the defendant wrote the following letter to the attorneys for the plaintiff:

"We are writing you, as the attorney for Dixie Furniture Company, Inc., in behalf of Central Surety and Insurance Corporation with respect to the claims and lawsuits against Dixie Furniture Company, Inc., arising out of the accident in Brinkley on or about October 6, 1953, at the property of N. D. Early.

"The purpose of the letter is to confirm the information and advice previously given you that Central Surety and Insurance Corporation does not recognize any liability or responsibility under Policy OP–162544 issued to Dixie Furniture Company, Inc., in connection with the claims being made and the litigation pending.

"Over and above and in addition to questions of coverage and the applicability of the policy because completed operations (products) coverage was not carried, the company is denying liability and responsibility because of the violations of the policy regarding notice of accident and notice of claim or suit. As you know, no notice was given to Central Surety and Insurance Corporation of the accident, of any of the claims, or of the litigation until after trial and judgment and Central Surety and Insurance Corporation had no knowledge.

"If you have any questions about this, we would be glad to try to get the answers for you."

On October 15, 1956, the attorneys for the plaintiff made a formal demand on the defendant, which was refused on October 19th, of the same year, defendant's counsel stating that "the Company's position is the same in that it feels that it has no liability in the premises".

It will have been noted that one of the positions taken by the defendant in the correspondence above abstracted was that the accident in question fell within the hazards included in Division 3, the "products" division, and did not fall within the "premises-operations" coverage, which was all that the plaintiff had bought. The "products" hazards were defined in the policy as follows: "The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named Insured, if the accident occurs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured, and operations covered under Division 1 of the Definition of Hazards, other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises." It is also to be noted that the contract contained certain "exclusions," one of which provided that the policy should not apply under Division 1 of the Definitions of Hazards to any liability with respect to which "insurance is or can be afforded under Division 3 of the Definitions of Hazards."

It is the theory of the plaintiff that the accident resulting from the negligence of its employee in failing to cap the gas pipe fell within Division 1 of the Definitions of Hazards and was covered by the policy. It is further contended that when Mr. McSpadden wrote his letter of January 10, 1956, he effectively waived any policy defenses based upon the plaintiff's failure to give notice of the accident and to furnish the defendant with the suit papers after the injured parties filed their suit in the Circuit Court. The defendant, on the other hand, denies that there was any coverage with respect to said accident, and denies that there has been any waiver of its policy defenses just mentioned.

■ Coverage may not be ascertained by a reading of Division 1 of the Definition of Hazards, standing alone. That Division must be read in connection with Division 3, and in connection with the exclusion heretofore quoted. When such is done, it appears that the accident arose from a "completed operations" hazard included in Division 3 and not included in Division 1. Granting that repossession of the stove in question was an operation necessary or incidental to the plaintiff's carrying on of business, and granting further that the negligence of the plaintiff's employee in the course of his repossession of the stove laid the train for the accident that later occurred, the plaintiff cannot escape the fact that the accident did not occur until after the repossession had been completed or abandoned, and that it occurred on premises other than those described in the policy. Hence, it fell within Division 3, Cf. Standard Accident Insurance Company v. Roberts, 8 Cir., 132 F. 2d 794.

In reaching this conclusion we do not overlook the fact that Division 1 included "pick-up and delivery", and that "pick-up and delivery" are excluded from Division 3. But the accident here involved did not occur in the course of a "pick-up", assuming that a repossession of merchandise would constitute such within the meaning of the policy, but only after the lapse of more than two weeks from the completion of such pick-up.

■ But even if the policy did cover this accident, it is clear that the failure of the plaintiff to give the required notice and to furnish the suit papers, the doing of which was expressly made a condition precedent to recovery, affords the defendant a complete defense to this action, Warren v. Commercial Standard Insurance Company, 219 Ark. 744, 244 S.W.2d 488, see also Home Life & Accident Company v. Beckner, 168 Ark. 283, 270 S.W. 529, unless there has been a waiver of that defense.

With reference to the question of waiver it may be noted that the letter written to the plaintiff by Mr. McSpadden was quite different from the letter written to the insured in the case of John Alt Furniture Co. v. Maryland Casualty Co., 8 Cir., 88 F.2d 36, cited by the plaintiff. There the company wrote the insured denying liability on the basis of a specific exclusion in the policy and saying nothing about any failure to give notice. In such circumstances, it was held that the denial constituted a waiver of the insured's non-compliance with the notice provisions of the policy. Here, however, the claim agent brought up both the question of coverage and the question of notice, and while he reported that he had been "orally advised" by the home office that the Company felt that coverage did not exist, he indicated that the company would give definite advice of its position. This was done after the suit in the State Court had gone to judgment and it could not have possibly misled or prejudiced the plaintiff; and when the attorneys for the defendant wrote the attorneys for the plaintiff, they asserted both positions. In other words, the company simply asserted two defenses to the claim. It is to be borne in mind that while the plaintiff was not prejudiced by the letter written it by the claim agent, the defendant was certainly prejudiced by the plaintiff's failure to give the required notice and to supply the suit papers. On account of this failure on the insured's part, the defendant lost the opportunity to investigate the case, to participate in the trial, and to endeavor to negotiate a settlement.

In this aspect the case is analogous to one in which an insured in a fire policy fails to file proof of loss within the time limited by the policy and thereafter the company defends on that basis and on others as well. Under such circumstances it is the law of Arkansas that the assertion of other defenses does not waive the failure to file proof of loss. Thus in Commercial Fire Insurance Company v. Waldron, 88 Ark. 120, 123, 114 S.W. 210, 211 the court said:

"After the time fixed by the policy for furnishing the proof of loss has expired and the forfeiture has occurred, the action of the insurer in denying liability works no prejudice on the insured. He is not misled, and his failure to present his proof of loss has not been occasioned thereby".

Similarly, in Smith v. American National Insurance Company, 111 Ark. 32, 36, 162 S.W. 772, 773, it was stated that the "mere assertion of a defense in addition to that of the failure to give notice does not deprive the insurer of that defense, if the insured is invited to incur no expense or trouble and nothing is done which influences the beneficiary to fail in the performance of that duty." To the same effect are Illinois Bankers' Life Association v. Byassee, 169 Ark. 230, 275 S.W. 519, 41 A.L.R. 379, and Cook v. United States Fidelity & Guaranty Company, 216 Ark. 743, 227 S.W.2d 135.[2] In view of the circumstances here present and of the authorities that have been cited, the Court is convinced that the policy provisions requiring notice of the accident and the furnishing of the suit papers have not been waived.

In his affidavit attached to the agreed statement of facts Mr. Allen B. Lewis, the principal stockholder of the plaintiff, explains his failure to give notice by the fact that the plaintiff did not foresee any possibility of being held liable to the injured parties and that it

2. It may be that in the days prior to the decision of the Supreme Court of the United States in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the Court of Appeals for this Circuit in the cases of John Alt Furniture Co. v. Maryland Casualty Co., supra, and Equitable Life Assurance Society v. Winning, 8 Cir., 58 F. 541, announced a "federal rule" different from the result reached by the Supreme Court of Arkansas in the cases that have been cited. But, however that may be, we are concerned here with the law of Arkansas as announced by the Supreme Court of this State.

did not know about the "pick-up and delivery" provision in Division 1. This explanation is insufficient to excuse the failure to give notice after it was brought home to the plaintiff that liability was being asserted against it and certainly after it was actually sued. An insured is charged with notice of his coverage and of his obligations under the policy, and, so far as the insurance company is concerned, he acts at his peril if he fails to give notice and speculates on the verdict of the jury in a suit brought against him by a third party. When he does so, and his speculation turns out to be wrong, he cannot then look to the company for satisfaction of the judgment against him.

Therefore, it is, by the Court, considered, ordered and adjudged that the plaintiff take nothing by its complaint herein, and that the same be, and it hereby is, dismissed with prejudice at the cost of the plaintiff.