**BITUMINOUS CASUALTY CORPORATION, Plaintiff,**

v.

**HORN LUMBER COMPANY, Inc., and Nell Davis, Administratrix of the Estate of Marion T. Davis, Deceased, Defendants.**

**Civ. A. No. 1100.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
April 24, 1968.

Wootton, Land & Matthews, Hot Springs, Ark., for plaintiff.

Shaw, Jones & Shaw, Fort Smith, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge.

This is a suit for a declaratory judgment on a liability insurance policy. The carrier, Bituminous Casualty Corporation (hereinafter referred to as Bituminous), filed its complaint against Horn Lumber Company, the insured (hereinafter referred to as Horn), praying for a declaration of non-liability on the policy. This court has jurisdiction because of diversity of citizenship and the amount in controversy.

The events giving rise to this action began on March 31, 1966, when Marion T. Davis, an employee of Perini, M-K, Leavell (hereinafter referred to as Perini), a construction company in Oklahoma, was injured by some falling lumber. The lumber had been purchased from Horn and was being unloaded at the job site in Oklahoma at the time. Mr. Davis died, apparently as a result of his injuries, and Mrs. Nell Davis, his widow and Administratrix of his estate,

sued Horn for damages.[1] The complaint was filed in this court, and that case is pending as Civil No. 1095. Anticipating possible involvement in that action because of its issuance of a liability policy to Horn, Bituminous filed its complaint for declaratory judgment.

The material allegations of the Bituminous complaint are as follows: that the plaintiff issued a comprehensive general liability policy (No. CL876248) to the defendant, Horn; that under paragraph (d) (2) of the "Exclusions" contained in the policy it was provided that the policy does not apply to "loading and unloading of * * * automobiles if the accident occurs away from such premises or the ways immediately adjoining"; that the policy, as shown by Item 3 of the Declarations, does not provide insurance to the defendant for accidents arising out of the ownership, maintenance or use of an automobile; and that the policy in question, by endorsement, specifically excludes coverage for "products hazard."

The complaint then refers to the accident and the fact that suit had been filed by Mrs. Davis against Horn. Also it is stated that Bituminous was advised of the pendency of the suit and requested by Horn to defend the suit and to pay any judgment which might be rendered against Horn.

The complaint further states that prior to the accident the defendant, Horn, had relinquished possession of the lumber to Perini, Mr. Davis' employer; that Horn's employee, the truck driver, did not participate in the unloading of the truck; that the accident grew out of unloading a truck owned by Horn and situated away from the "premises or ways immediately adjoining"; that the policy of insurance excludes products hazard; that Bituminous has no obligation to defend the suit or pay any judgment; and that a real and substantial controversy now exists between the plaintiff, Bituminous, and the defendant,

Horn, in respect to their conflicting claims and legal relations which can properly be determined by a declaratory judgment.

The prayer seeks judgment declaring "that plaintiff is relieved of any duty to defend the suit filed by Nell Davis, Administratrix of the Estate of Marion T. Davis, deceased, against Horn Lumber Co., a corporation * * * and to pay any judgment which may be rendered therein * * *."

In its answer the defendant admitted all of the allegations in the complaint except the statement that the policy does not provide coverage arising out of the ownership, maintenance, or use of an automobile and the other general statements in the complaint alleging want of coverage concerning the policy in question.

Specifically, the defendant admits that the accident happened; that suit was brought; that the policy does not apply to "products hazard" or "loading or unloading"; and that at the time of the accident possession of the lumber had been relinquished by Horn to Perini; but denies want of coverage on the policy.

For its counterclaim the defendant adopts the allegations in its answer; prays for judgment declaring "that the plaintiff has a duty to defend the action filed against the defendant in this court herein, Civil No. 1095, and to pay any judgment rendered in said case up to the limits of its liability under the terms of its insurance contract issued to this plaintiff"; and further prays for judgment in the amount of $15,000 for defense of this suit and Civil No. 1095.

On February 29, 1968, the defendant filed its "Response to Request for Admissions and Genuineness of Documents," in which it admitted in effect that it had nothing to do with the packaging of the fatal bundle of lumber and that it picked up the lumber, already packaged, from Holicer-Jones Lumber

---

1. Mrs. Davis was also named as a party defendant in the complaint filed by Bituminous. However, she has not filed an answer or any other pleading in this case.

Company in Benton, Arkansas, and delivered same to Perini in the exact state as it was received from Holicer-Jones.

Bituminous and Horn have both filed motions for summary judgment. The court is of the opinion that there is no genuine issue as to any material fact and that the sole issue is one of law, properly determinable on the cross motions for summary judgment.

In summary, the plaintiff contends that there is no liability coverage under the insurance policy mentioned because the policy excludes coverage of "products hazard" liability and liability arising from the use of an automobile, and it has no duty to defend the Davis suit or to pay any judgment rendered against Horn.

The defendant contends that "possession" of the lumber had not been relinquished as that term is contemplated by the policy, and therefore the "products hazard" exclusion does not apply; that the accident did not result from the use of an automobile, and therefore that exclusion does not apply; and that, regardless of whether "coverage" exists, the plaintiff is bound to defend the Davis suit according to the law in Arkansas.

The court is of the opinion that the contentions of the plaintiff are well founded and that the contentions of the defendant are without merit. In the discussion of the respective contentions of the parties, there is necessarily some duplication, but the court believes that the parties are entitled to a full discussion of each and every contention.

One of the allegations contained in the Bituminous complaint is that the policy excluded coverage for "products hazard." The defendant in its answer admits this allegation.

The products hazard endorsement provides: "It is agreed that the policy does not apply to the products hazard as defined therein."

Under "Conditions" it is stated:

"(g) Products Hazard. The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured * * * if the accident occurs *after possession of such goods or products has been relinquished* to others by the named insured * * *." (Emphasis added.)

The endorsement is written, apparently, to exclude coverage for injuries which result from defects in products after the product has been given up by the insured and placed in the stream of commerce. In other words, the policy did not cover "products liability."

In Appleman, Insurance Law and Practice, Vol. 7A, § 4508, page 98, the learned author states:

"* * * An injury or loss may result while an activity is in progress, and prior to the completion thereof, either as the result of an act of negligence or an omission. That is what is embraced within the ordinary liability aspect of a public liability policy. But if the operation has been completed, and liability results thereafter either by reason of a defect in merchandise or improper workmanship, that is called 'products liability' or 'completed operations' [here 'products hazard'], the protection of which can be purchased for a premium. Neither type of coverage is intended to supplant the other, nor would the premiums charged be adequate for that purpose."

Writing further, at page 103 the author states:

"One common form of exclusion clause refers to the relinquishment by the insured of possession [of the product] as creating a line demarcation [of coverage for liability]."

This is the situation presented here, and the only question insofar as this exclusion is concerned is whether "possession" by Horn had been "relinquished" to Perini.

In its complaint Bituminous alleges that "prior to the time of the injuries * * * [Horn] * * * had relin-

quished possession of said load of lumber to Perini, M-K, Leavell * * *." As stated earlier, the defendant admits this allegation in its answer. The defendant in its brief recognizes this, but states: "There is more than one interpretation that can be given the word 'possession.'"

The defendant contends that "Horn Lumber Company, Inc., had relinquished possession of said load of lumber to the purchaser, Perini, M-K, Leavell, only for the purpose of unloading said load of lumber. Under the circumstances in this case, Horn Lumber Company, Inc., was not allowed to unload the lumber, and therefore after its truck was pulled onto the premises of Perini, the unloading operation was performed by employees of Perini."

In speaking of the ambiguity of the term "possession," the defendant poses the following inquiry:

" * * * did 'possession' *within the meaning of the Bituminous insurance policy* pass from Horn Lumber Company to Perini: At the time Horn's truck pulled onto the premises of Perini, or at the time Horn's truck driver got out of the truck, or at the time Horn's truck driver released the winches and cables on the load, or at the time Perini's employees affixed the cables from the motor crane onto the lumber, or at the time the lumber was raised into the air, or at the time the lumber was placed on the premises at Perini."

In a legal sense "possession" of Horn terminated when the truck was stopped on the Perini premises and the lumber on the truck was "delivered" to Perini. The purchase order calling for the shipment provided: "F.O.B. point—job site."

Section 12A–2–319 of the Oklahoma Statutes provides in part as follows:

"12A–2–319. F.O.B. and F.A.S. terms. —(1) Unless otherwise agreed the terms F.O.B. (which means 'free on board') at a named place, even though used only in connection with the stated price, is a delivery term under which

* * * * * *

"(b) when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this Article (Section 2–503)."

Section 12A–2–401 of the Oklahoma Statutes provides in part as follows:

"(2) * * *

"(b) if the contract requires delivery at destination, title passes on tender there."

Therefore, legally, delivery was completed and possession relinquished when the truck was stopped at the job site.

It is possible, in fact probable, that the parties, carrier and insured, did not contemplate legal possession when they entered into the contract of insurance. It may be presumptuous to assume that Horn contemplated the term at all, but for the purposes of this dispute the court must determine, if only fictionally, what the parties intended when they entered into this insurance agreement.

A decision involving an insurance clause very similar to that presented here is General Casualty Co. of America v. Azteca Films, Inc. (9 Cir. 1960) 278 F. 2d 161. There the court had to determine when possession of goods had been relinquished. The court at page 167 stated:

"All rules of construction are subordinate to the leading principle that the intention of the parties, to be collected from the entire instrument, must prevail, unless inconsistent with some rule of law. [Citation omitted.] The test to be applied by the court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. [Citations omitted.] In other words, the criterion is ambiguity from the standpoint of a layman, not from that of a lawyer. Where it is possible to adopt a construction which is favorable to the in-

sured without doing violence to the policy wording that construction will be preferred. This anticipates a reasonable interpretation of the language and can apply only so far as the fair application of the ordinary meaning of language permits. But this rule of strict construction against the insurer cannot apply unless there is some reasonable basis for doubt. Couch on Insurance 2d states:

" ' "Usual and ordinary meaning" has been stated variously to be that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal man, to a reasonable man, to persons with usual and ordinary understanding, to a businessman, or to a layman.' Couch on Insurance 2d § 15:18 [Citations omitted.]

"Applying these rules to the instant exclusionary clause, it would seem that the word 'possession' as here used would convey to the ordinary mind, the layman, the idea of actual possession."

Applying the foregoing test, with which the court agrees, "possession" of the lumber was relinquished by Horn when Perini assumed control, or, to answer the defendant's question, "at the time Perini's employees affixed the cables from the [Perini's] motor crane onto the lumber."

At the time of the accident Horn had relinquished possession of the lumber. As far as liability for "products hazard" is concerned, there was no coverage.

■ The second contention of plaintiff, as set forth in its brief, is "no coverage is afforded defendant in this case because of the automobile exclusion." In paragraph 4 of the plaintiff's complaint it is alleged:

"This policy does not apply:

"(d) under coverages B and D, except with respect to operations performed by independent contractors and except with respect to liability assumed by the insured under a contract as defined herein, to the ownership, maintenance, operation, use, loading or unloading of (1) * * *, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, * * *."

The defendant in its answer also admits this allegation.

In paragraph 9 of plaintiff's complaint, it is alleged that the accident alleged in the Davis complaint grew out of the unloading of a truck belonging to the Horn Lumber Company, and which occurred away from its premises or the ways immediately adjoining; and that the plaintiff is not obligated to defend or pay any judgment which may be returned against the defendant, Horn, by reason of the complaint filed against it by Mrs. Davis.

In paragraph 3 of its answer, the defendant "denies all allegations in paragraph 9 made by the plaintiff which allege that there is no coverage concerning the plaintiff's policy issued to this defendant *and admits* the other allegations in said paragraph." (Emphasis added.) Thus, the defendant admits that the accident alleged in the Davis complaint grew out of the unloading of a truck belonging to Horn and that it occurred away from the premises of Horn or the ways immediately adjoining.

In paragraph V of the Davis complaint it is alleged that the decedent was engaged "in the unloading of a truck of lumber purchased from the defendant, Horn Lumber Company, which said lumber was delivered by defendant and/or its duly authorized agent and was, and had been, in the exclusive custody and control of the said defendant since the time of its packaging." In paragraph VII of the Davis complaint it is alleged:

" * * * that the defendant was careless and negligent in the packaging and containing of said lumber in the following particulars, to-wit:

"(1) In failing to make a proper inspection.

(2) In failing to adequately package and secure said lumber.

(3) In using improper packaging and binding materials.

(4) In failing to warn of the danger reasonably known to the said defendant of the fact that said lumber might break or come loose from its binding and packaging.

"That the foregoing acts of negligence and carelessness on the part of said defendant, its agents, servants and employees, were the direct and proximate cause of the incident which caused the grievous personal injuries and ultimate death of the said decedent, Marion T. Davis, as aforesaid, and that said defect in packaging was unknown to the said decedent, Marion T. Davis, and was known, or could have been ascertained, by the defendant, and that it is liable for said careless and negligent acts."

In paragraph IX of the Davis complaint it is alleged that the decedent's death was a direct and proximate result of the breach of warranty expressed and implied by Horn, or as a direct and proximate result of the foregoing acts of negligence of the said defendant.

The courts have uniformly held that the "accident" does not occur at the time of the negligent act which might bring it about, but occurs at the time the bodily injury occurs. In George W. Deer & Son v. Employers Indemnity Corp. (7 Cir. 1935) 77 F.2d 175, the appellant had purchased a public liability policy from the appellee covering oil products public liability, and a few hours after the policy became effective an explosion occurred caused by the delivery of kerosene to which an explosive material had been added a few days prior to the issuance of the policy. The court held that the "accident" occurred at the time of the explosion when the policy was in effect and not at the time the mistake had been made in adding the explosive material to the kerosene and the delivery thereof prior to the issuance of the policy. See also Annotation, 57 A.L.R.2d 1385.

■ As heretofore stated, the decedent received the injury from which he died in Oklahoma, and the substantive law of Oklahoma applies as to the common-law liability for the injury.

In Beesley v. United States (10 Cir. 1966) 364 F.2d 194, the court at page 196 said:

"The Oklahoma Supreme Court has developed a clear expression of the law of proximate cause in Oklahoma. The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury. Porter v. Norton-Stuart Pontiac-Cadillac of Enid, 405 P.2d 109 (1965). Where the negligence complained of only creates a condition which thereafter reacts with a subsequent, independent, unforeseeable, distinct agency and produces an injury, the original negligence is the remote rather than the proximate cause thereof. This is held to be true though injury would not have occurred except for the original act. Transport Indemnity Co. v. Page, 406 P.2d 980 (1965); Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277 (1949); City of Okmulgee v. Hemphill, 183 Okl. 450, 83 P.2d 189 (1938). Thus, the proximate cause of an event must be that which in the natural and continuous sequence, unbroken by any independent cause, produces that event and without which that event would not have occurred. Porter v. Norton-Stuart Pontiac-Cadillac of Enid, supra; Mathers v. Younger, 177 Okl. 294, 58 P.2d 857 (1936)."

In the instant case there was no accident of any nature until during the unloading of the lumber after it was delivered to the consignee and while being unloaded by the employees of the consignee.

It is therefore the opinion of the court that any claim for damages on the part of Mrs. Nell Davis is based either on products hazard or use of the vehicle. The court need not, at this time, determine which because both are specifically excluded from the coverage afforded by the Bituminous policy.

On page 2 of the defendant's brief it further contends that coverage and duty to defend under the terms of a policy are determined by the complaint

372

filed against the insured, and in support of the contention cites the case of Equity Mutual Ins. Co. v. Southern Ice Co. (1960) 232 Ark. 41, 334 S.W.2d 688.

In section II(a) of the "Insuring Agreements" of the policy it is stated:

"With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."

■ Rule 57, Fed.R.Civ.P., provides:

"The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C., § 2201, shall be in accordance with these rules, * * *. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

Apparently this rule recognizes that in the exercise of a sound judicial discretion the court may determine whether to accept for hearing and trial a complaint for a declaratory judgment.

■ The complaint of the Administratrix against the insured, Horn, does not state facts bringing the alleged injury within the coverage of the policy, and therefore the insurer, the plaintiff herein, is not required to defend the suit.

In fact, the allegations of the complaint show conclusively that the question of lack of coverage could not be determined in the trial of Civil No. 1095, Davis, Admrx., v. Horn Lumber Company, Inc., and the plaintiff herein had no other recourse except to file the instant suit for declaratory judgment as to coverage.

In State Farm Mutual Automobile Ins. Co. v. Bonwell (8 Cir. 1957) 248 F.2d 862, the court, speaking through Judge Van Oosterhout, at page 868 said:

"Appleman, Insurance Law and Practice, Vol. 8 [2], states (p. 8):

" 'An insurer's duty to defend an action against the insured is measured by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff. * * *'

"See, also, Pennsylvania R. Co. v. Travelers Ins. Co., 6 Cir., 226 F.2d 520, 522; American Fidelity & Casualty Co. v. Service Oil Co., 4 Cir., 164 F.2d 478, 480; Marshall's United States Auto Supply Inc. v. Maryland Casualty Co., 354 Mo. 455, 189 S.W.2d 529, 532.

"The state court complaints positively assert that the decedent, Don Shaffner, was not an employee, acting in the course of his employment at the time of the accident. If this statement is true, there is unquestionably insurance coverage. In any event, the issue in the declaratory judgment action pertaining to the insurer's obligation to defend would present no more than a factor for the consideration of the court upon the issue of the exercise of discretion."

In Appleman, Insurance Law and Practice, Volume 7A, § 4684, p. 448, the learned author states:

"As we have seen, by the express terms of the policy the insurer is generally required to defend suits against the insured which the pleadings show to be within the policy coverage, even though such suits be groundless, false or fraudulent. *But a distinction must be drawn between groundless suits, and actions which, even if successful would not be within the policy coverage.* Since the insurer's duty to defend ordinarily is correlative with its duty to pay a judgment which might be obtained against insured, it is ap-

**2.** The above section now appears as §. 4683, p. 436, of Volume 7A, Appleman, Insurance Law and Practice.

parent that the insurer has the duty of defending only those actions that are within the terms of the policy, and where there has been no breach of the policy." (Emphasis added.)

The decision in Equity Mutual Ins. Co. v. Southern Ice Co., supra, relied upon by the defendant, does not support the claim of the defendant that the plaintiff was bound under the policy to defend the suit of Davis, Admrx. v. Horn Lumber Co., Inc. Beginning at the bottom of page 48 of 232 Ark., at page 693 of 334 S.W.2d, the court said:

"We hold that in the case at bar, Equity Company violated its obligation to defend these assureds. We have only to look at the allegations—previously copied—in the third party complaint (Case No. 4168) and the allegations against the Borden Company and Gober in Case No. 4210, to see that the Equity Company has breached its obligation to defend its insureds, as distinct from its duty to pay. The great weight of authority, in cases like this and involving the insurer's duty to defend, is that the allegations in the pleadings against the insured determine the insurer's duty to defend. It is not what the insurance company may have gleaned from its outside investigation: it is the allegations made against the insured—however groundless, false, or fraudulent such allegations may be—that determine the duty of the insurer to defend the litigation against its insured. In Am.Jur. Vol. 5A page 122 'Automobile Insurance' § 119, the holdings are summarized: 'As a general rule, the obligation of an automobile liability insurer under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action.' "

Thus, the holding of the Arkansas Supreme Court is in accord with the general rule in respect to the duty to defend.

For the reasons hereinbefore set forth, no coverage was afforded the insured, Horn, and under the allegations of the Davis complaint against Horn, the plaintiff owes Horn no duty to defend or to pay any judgment which may be obtained by Mrs. Davis as Admininstratrix as against Horn.

Therefore, judgment is being entered today sustaining the motion for summary judgment of the plaintiff, Bituminous Casualty Company, and dismissing the motion for summary judgment and the counterclaim of the defendant, Horn Lumber Company, Inc.