FARM BUREAU MUTUAL INSURANCE
Company of Arkansas, Inc. *v.* Joseph
Shelby LYON

75-67                                          528 S.W. 2d 932

Opinion delivered November 3, 1975

*Tackett, Moore, Dowd & Harrelson,* for appellant.

*McMath, Leatherman & Woods* and *Wm. R. Wilson, Jr.,* for appellee.

ELSIJANE T. ROY, Justice. This case presents a novel issue which has not heretofore been considered by this court. Both appellee and appellant have favored us with excellent briefs.

The appellant, Farm Bureau Mutual Insurance Company of Arkansas, Inc., or on about December 2, 1970, contracted to insure Jack Hardman, d/b/a Hardman's Sporting Goods, against liability for certain hazards in his business operations.

The appellant's broad general insuring language in the subject policy provided as follows:

> Coverage A - Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages (except punitive damages) because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person. . . .

While the policy was in full force and effect, the insured's agent sold gunpowder, which was to be used as an explosive in a sound-making device at football games, to some minors including Joseph Shelby Lyon. Appellee Lyon, when using the gunpowder for this purpose, was severely and permanently injured by an explosion of the gunpowder. Thereafter, he filed suit against the insured alleging negligence in the sale of the gunpowder. The trial resulted in a $38,500 judgment in appellee's favor against the insured. The appellant refused to defend on the basis of an exclusion contained in the policy which provides as follows:

> This policy does not apply under Coverages A (bodily

injury liability) \*\*\*\*, to *products hazard,* which is defined as follows: (emphasis supplied)

(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured:

(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured.

In joining the issues appellant filed a motion for summary judgment and later an amended motion for summary judgment alleging there was no genuine issue as to any material fact and that the appellant was entitled to judgment as a matter of law. Appellee filed a cross-motion for summary judgment and response to defendant's motion which alleged that the exclusion in the subject insurance policy, relied upon by appellant as its sole defense, is inapplicable as a matter of law and, there being no genuine issue of material fact on this point, appellee is entitled to summary judgment on his complaint. Furthermore, in the alternative, in response to appellant's motion for summary judgment, appellee states that appellant's agent made a material misrepresentation or representation to its insured, Jack Hardman, on which he relied; the representation was to the effect that the subject insurance policy covered Hardman against the type of risk which gave rise to appellee's injuries; and appellant is bound by such representation or misrepresentation.

The court, after due consideration of the respective summary judgment motions, attached affidavits and certain designated portions of depositions and on December 20, 1974, rendered a summary judgment for appellee in the sum of $38,500 plus interest, penalty and a reasonable attorney's fee in the sum of $5,000. The appellant timely perfected this appeal.

For reversal the appellant relies upon the following points:

1. The trial court erred in refusing to grant defendant's motion for summary judgment, and

2. The trial court erred in determining that a material fact question existed in the event the validity of the exclusion was determined in defendant's favor by Summary Judgment.

The issue before us, as far as the exclusion is concerned, is whether the judgment awarded appellee Lyons falls within a risk covered by the insurance policy. Stated conversely, was the negligent sale of the gunpowder, under the circumstances of this case, a risk which is excluded from the terms of the policy?

This court has not passed on the precise question presented here and there is a definite split on the point at issue in other jurisdictions. Some courts have given a broad sweep to the "products completed operations" exclusion (which this exclusion is often called) in favor of the insurer to an extent which this court finds unwarranted upon consideration of the policy as a whole. However, other courts have read the exclusion in conjunction with the basic insuring clause and looked to see whether an off-premises injury was proximately caused by on-premises negligence as opposed to off-premises negligence or a defective product.

We think the better view is that enunciated in the trial court's opinion and in the cases supporting the reasoning of the trial court in granting appellee's motion for summary judgment. The language of the exclusion clearly appears to indicate it is to apply to "products completed operations" only.

Appellant's brief calls attention to some general insurance law with which this court does not find fault. The fault lies in the appellant's application of the principles enunciated. Some of appellant's citations and quotes therefrom might more appropriately be cited in behalf of appellee.

We call attention to one of appellant's citations of this nature which indicates that in all probability the exclusion was drafted to cover the ever broadening products liability field and has no application to the general insuring provision.

7A Appleman, Insurance Law and Practice, § 4508, p. 98, (1962) states:

> *Products liability insurance is becoming increasingly important* with the passage of time, in view of the ever present potentialities for injury resulting from such things as lime compounds used for waterproofing, cosmetics, drugs, certain dyed materials, *explosives, and other products possessing inherent hazards.* Clearly a company which writes an ordinary liability policy does not want a risk extending without end as a result of work performed or merchandise sold; nor, conversely, would a company willing to undertake the products risk want to assume the general liability burden. (emphasis supplied)

****

> *It is scarcely just either to deprive a purchaser of the protection he is entitled to receive or to extend one type of coverage to fit a completely different situation from that contemplated.* (emphasis supplied)

Appellee contends, and we agree, that this accident was the type for which he purchased coverage since the negligence which was the proximate cause of the accident occurred on premises insured under the terms of the policy.

A number of the citations upon which appellant relies are distinguishable. In *Dixie Furniture Co.* v. *Central Assurity and Ins. Co.*, 173 F. Supp. 862 (E. D. Ark. 1959), a loss occurred off of the insured's furniture store premises when the insured's employee, repossessing a stove, negligently failed to cap a gas pipe. After a third party was injured and sued the insured, the insured there sued the insurance company. Judge Henley noted that the accident arose from the "completed operations" sub-section of the "products provision." In other words, a work project away from plain-

tiff's premises was involved and this renders the case entirely different from the case at bar. The *negligence* which caused the accident occurred off the insured's premises as contrasted with the negligence here of Hardman's agent which occurred in his store.

Appellant's citation, *Bituminous Casualty Corp.* v. *Horn Lumber Co.*, 283 F. Supp. 365 (W. D. Ark. 1968), supports appellee, not appellant. In *Bituminous* a person was injured when straps binding lumber on a lumber truck broke during an unloading procedure allegedly because of a defect in the binding materials. In construing this exclusion, Judge Miller wrote:

> The endorsement is written, apparently, *to exclude coverage for injuries which result from defects in products* after the product has been given up by the insured and placed in the stream of commerce. In other words the policy did not cover 'products liability.'

In the case at bar neither party alleges any defect in the gunpowder purchased by Lyons.

In *Standard Accident Insurance Co.* v. *Roberts*, 132 F. 2d 794 (8th Cir. 1942), the insured, a seller of furniture and appliances in the State of Arkansas, negligently installed a refrigerator in a customer's home. The customer and his family were injured by escaping gas that very night. The loss was excluded under the Products-Completed Operations hazard, largely because it occurred away from the insured's premises. Appellant can find no support from this citation as, again, we find a work project away from the insured's premises.

We are not overlooking other citations furnished by appellant in support of its position, but we do not find the reasoning upon which they are buttressed to be as sound as that found in *St. Paul Ins. Co.* v. *Coleman*, 316 F. 2d 77 (8th Cir. 1963), affirming 204 F. Supp. 713 (W. D. Ark. 1963). In that case the general insuring clause provided coverage for hazards related to the "ownership, maintenance or use of the premises and all operations" (of a public boat dock business).

The insured's employee had negligently refueled plaintiff's boat and after the boat had drifted about 73 feet from the boat dock, it caught fire, injuring several persons. The insurance company denied coverage based on the Products-Completed Operation exclusion (the exclusion relied upon by defendant in this case) which provided that:

> . . . . '[I]f the accident occurs after possession of such goods or products (i.e., those "manufactured, sold, handled or distributed by the Named Insured") has been relinquished to others **\*\*\*\*** and *if an accident occurs away from premises owned*, rented or controlled by the Named Insured, coverage for such an "occurrence" is not afforded by its policy. . . . ' (316 F. 2d, p. 79) (emphasis supplied)

The Eighth Circuit held that the negligent refueling of gasoline did not render it a "products case" which would be excluded under the "Products-Completed Operation" exclusion. The court stated:

> . . . . The appellees do not make any claim that they were injured because of the *nature or condition* of the gasoline sold to Stover (plaintiff). (emphasis supplied by the court)

*****

> . . . . The place where the fire 'occurred' is not here' controlling under the 'Premises-Operations' coverage afforded by appellant's policy. (316 F. 2d, p. 80)

The insurance company in *Coleman* attempted to do exactly what the appellant here is trying to do, i.e., tie the "away from premises" exclusion onto the basic coverage. The Eighth Circuit rejected this attempt:

> Under the terms of appellant's policy, 'Products-Completed Operations' is the only coverage related to 'away from premises' exclusion. There is no such limitation or exclusion from coverage as to 'Premise-Operations.' Appellant's attempt to read that limitation

into the 'Premises-Operations' coverage is not justified by any rule of construction known to us. An unbiased reading of appellant's policy must convince a reasonable mind that such is not a proper legal interpretation thereof. (316 F. 2d, p. 80)

Judge Miller quotes from Appleman:

'. . . . [A]n injury or loss may result while an activity is in progress, and prior to the completion thereof, either as the result of an act of negligence or an omission. That is what is embraced within the ordinary liability aspect of a public liability policy. But if the operation has been completed, and liability results thereafter either by reason of a *defect in merchandise* or *improper workmanship*, that is called 'products liability' or 'completed operations' (here "products hazard"), the protection of which can be purchased for a premium. . . . ' (283 F. Supp., p. 368) (emphasis supplied)

Another case following the same line of reasoning as *Coleman* and almost identical with the case at bar is *McGinnis* v. *Fidelity and Casualty Co. of N.Y.*, 276 Cal. Appl. 2d 15, 80 Cal. Rptr. 482 (1969). In that case a fifteen year old boy purchased a can of gunpowder from the insured ammunition dealer. A week later the powder exploded and McGinnis was injured. He sued the dealer and obtained a judgment, then he sued the insurance company which had declined coverage. The California court noted that the insured ammunition dealer had not paid a premium for the following specific coverage:

'Division 4-Products-Completed Operations.

(1) Goods or products manufactured, sold, handled or distributed by the named insured, or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured. . . . ' (80 Cal. Rptr., p. 483)

The defendant insurance company contended that the failure to buy this specific coverage excluded coverage, but *the California court held that the dealer was insured under the general insuring clause.* In regard to the Products-Completed Operation provision, that court stated:

> One would be hard put to express a 'products liability' exclusion more clearly than does the foregoing clause upon which appellant relies. Since Piper (ammunition dealer) paid no premium for such coverage, the first question that emerges is whether the accident in this case comes within the doctrine of products liability and, a fortiori, within the exclusion.

In *Lessak* v. *Metropolitan Casualty Ins. Co. of N.Y.*, 168 Ohio St. 153, 151 N. E. 2d 730 (1958), the insured was an individual doing business as a hardware company and he sold some BB's to a minor in violation of state law. Subsequently the minor was injured by the BB's. The involved insurance policy has the same general insuring clause as to bodily injury liability as we have in the case at bar. The policy in *Lessak* offered additional coverage under "Division 3 Products" and the coverage offered there is set forth in language almost identical to the exclusion in the policy in the instant case. The insured in *Lessak* had not purchased coverage under Division 3 and contended that he was covered under Division 1. The insurance company declined coverage on the contention that the risk came under Division 3, which the insured had not purchased. The court rejected this contention and held for the injured party and the insured. After pointing out there was not a defective product involved, the court stated:

> A careful perusal of division 3, 'Products,' discloses that it is concerned with reference to the existence of any conditions or warranty of goods or products manufactured, sold, or handled or distributed by an insured, and that it is not applicable to the hazard described in division 1, upon which plaintiff must rely.

> *It is not claimed that the B-B pellets,* which plaintiff's employee is alleged to have sold to the boy **** *were in*

*any manner defective,* or that there was any breach of warranty in the sale of them. In fact, there is nothing relative to the condition of the pellets themselves. (emphasis supplied)

*It is true that the accident for which damages are claimed* \*\*\*\* *arose away from plaintiff's premises* and the insurance company strenuously maintains that the hazards under division 1 contemplate only accidents occurring upon the premises. However, the language of division 1 does not so state. Such division is only a description of the hazard, and that was the alleged *unlawful selling of the B-B shot on the premises of plaintiff. Assuredly, that was an operation necessary or incidental to the purpose for which the premises were used.* There is no statement in the policy with reference to the place where the accident occurs, and if the insurance company intended to limit the place of the accident, as well as the incidence of the hazard, to the premises of plaintiff, it could easily have so stated in the policy. (151 N.E., p. 734-5) (emphasis supplied)

As in *Lessak* the general insuring clause in the case at bar has no on-premises limitation as to situs of the accident. The negligent sale of the gunpowder was on insured's premises. The sale was the proximate cause of the accident and of appellee's injuries (not a defective product — nor completed operations away from the premises of the insured). Therefore, it is clear the exclusion has no application herein.

Having decided the motion for summary judgment in appellee's favor it is unnecessary to reach or decide the issue raised by appellee regarding any alleged representations or misrepresentations by appellant's agent.

Accordingly, the judgment of the lower court is affirmed in all particulars, including penalty and attorney's fees.

FOGLEMAN, JONES and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I disagree with the majority view. The cases the majority relies upon, such as, *Lessak* v. *Metropolitan Casualty Ins. Co. of N.Y.,* 168 Ohio St.

153, 151 N.E. 2d 730 (1958), recognize that an insurance company can limit its coverage to both the place and incidence of the hazard to the insured's premises. At page 9 of the majority opinion the above subject case is quoted as follows, — to-wit:

". . . , and if the insurance company intended to limit the place of the accident, as well as the incidence of the hazard, to the premises of plaintiff, it could easily have so stated in the policy."

Under the policy before us the Farm Bureau Ins. Co. did limit the place of the accident and the occurrence to the appellee's premises. Its policy provides:

"1. COVERAGES
Coverage A — Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages [except punitive damages] because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person . . . .

2. EXCLUSIONS

The policy does not apply:
(i) under Coverages A and B, to products hazard, which is defined as follows:

1. the handling or use of . . . goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured."

Had not the term "products hazard" been defined by the policy, I would agree that the authorities cited by the majority are controlling. Here, however, the term "products hazard" is defined by the policy to exclude bodily injury arising from the "handling or use of . . . goods . . . distributed by the named insured, if the accident occurs after the insured

has relinquished possession . . . and away from the premises . . . controlled by the insured." The accident giving rise to this claim occurred both after the insured had relinquished possession and away from the insured's premises, and I can think of no logical reason for pointing out as the majority does that an insurer can limit the place of the accident when it so states and then not applying the above stated exclusion in this policy.

For the reasons stated I respectfully dissent.

FOGLEMAN and JONES, JJ., join in this dissent.