United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 7, 2005**

Charles R. Fulbruge III
Clerk

REVISED JULY 8, 2005

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-60707

_____

ANGELA WHIDDON,

MINOR BY AND THROUGH ANGELA WHIDDON, MOTHER AND GENERAL GUARDIAN,

Plaintiff-Appellee,

VERSUS

FEDERATED MUTUAL INSURANCE COMPANY, ET AL.,

Defendants,

FEDERATED MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
m 2:03-CV-435

_____

Before SMITH, DENNIS, and PRADO,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Federated Mutual Insurance Company ("Federated") appeals a summary judgment in favor of Kassie Orr, through her legal representative Angela Whiddon, in this declaratory judgment action involving disputed issues of insurance coverage. Finding no error, we affirm.

## I.

Catron Oil, Inc. ("Catron"), the insured, owns and operates a gas station and convenience store in Hattiesburg, Mississippi, and sold beer to two minors in violation of state law.[1] While a passenger in a vehicle driven by one of those minors, Orr was severely injured when the driver, under the influence of alcohol, lost control and crashed into a tree. Orr, through her legal representative, sued Catron in Mississippi state court, asserting dram shop liability.

On behalf of its insured, Federated executed a settlement with Orr pursuant to which it paid the per-occurrence policy limit under Catron's liquor liability policy and further agreed to pay any sums ultimately determined, in a parallel declaratory judgment action in federal court, to be covered by either or both of Catron's other two insurance policies underwritten by Federated, which were a primary commercial liability policy and an umbrella liability policy.[2]

In the instant federal declaratory judgment action, the parties filed cross-motions for summary judgment. Federated maintained that neither the primary commercial liability policy nor the umbrella liability policy issued to the insured provided coverage for Orr's injuries; Orr claimed that both policies provided coverage.

The district court entered partial summary judgment in favor of Federated on the ground that damages for Orr's injuries did not come within its coverage obligation under the primary commercial liability policy; but the district court also granted a partial summary judgment in favor of Orr on the ground that damages for her injuries did come within Federated's coverage obligation under the additional liability coverage provisions of the umbrella policy. Federated appeals the summary judgment in favor of Orr.

## II.

We review a summary judgment and a district court's interpretation of the relevant

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *See* MISS. CODE ANN. § 67-3-53 (Rev. 2001).

[2] Orr filed the declaratory judgment action against Federated and Catron in state court, seeking a declaration that the damages owed by Catron for her injuries were covered by its two additional insurance policies. Federated removed the action to federal district court on the basis of diversity jurisdiction and, in support of which, maintained that Catron, a Mississippi corporation, had been improperly joined as a defendant, and thus moved the district court to realign Catron as a plaintiff, thereby creating complete diversity of citizenship. Orr initially opposed the motion and moved for remand but, as part of the settlement of the underlying tort suit, agreed to confess the realignment issue, thereby enabling the declaratory judgment action to proceed in federal court.

insurance policies *de novo*, applying the same standards as did the district court. *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 805 (5th Cir. 1997); *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 475 (5th Cir. 1996). "Under Mississippi law, courts interpret insurance policies according to contract law. This interpretation is limited to the written terms of the policy. If the policy is unambiguous, its terms must be given their plain meaning and enforced as written." *Nethery*, 79 F.3d at 475 (citations omitted).[3]

### III.

At the time Orr sustained her injuries, Catron had three insurance policies underwritten by Federated: (1) a liquor liability policy; (2) a primary commercial liability policy; and (3) an umbrella liability policy. In the underlying tort suit, as we explained, Orr, and Federated on behalf of Catron, settled for the per-occurrence limit on the liquor liability policy. In this declaratory judgment action, then, the question before the district court was whether there is additional coverage for Orr's injuries under either or both the primary commercial liability policy and the umbrella liability policy.

### A.

The district court concluded that Orr's injuries were not covered by the insured's primary commercial liability policy because that policy contains an exclusion for bodily injury for which the insured may be held liable by reason of the sale of alcohol to a minor. Orr does not cross-appeal this holding.

---

[3] *See also Aero Int'l, Inc. v. United States Fire Ins.* Co., 713 F.2d 1106, 1109 (5th Cir. 1983) (applying Mississippi law); *J & W Foods Corp. v. State Farm Mut. Auto Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).

### B.

The district court then turned its attention to whether there is additional coverage for Orr's injuries under the umbrella policy, which provides two distinct types of coverage: (1) "excess liability coverage" and (2) "additional liability coverage." The umbrella policy defines the insurer's obligation for "excess liability coverage" as follows:

> Except as excluded under the underlying insurance, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages that are covered under the underlying insurance: (a) because of bodily injury . . . (b) which are in excess of the applicable insurance limit.

In contrast, the umbrella policy defines the insurer's obligation for "additional liability coverage" as follows:

> Except as excluded in Section II, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages from an occurrence during the policy period arising from . . . the "products-completed operations hazard" anywhere in the world.

Critically, in section II, captioned "Exclusions," the umbrella liability policy treats these two types of coverageSSexcess liability and additional liabilitySSdifferently. As to excess coverage, the umbrella policy provides that "the exclusions in the underlying insurance apply." Thus, the exclusions in the other policies limit Federated's coverage obligation for excess liability. As to additional liability coverage, however, there are thirteen enumerated exclusions, none of which is applicable here or claimed to be by Federated.

3

The umbrella policy defines "products-completed operations hazard," for which Federated owes additional liability coverage to Catron, as follows:

> [A]ll bodily injury and property damage occurring away from premises you own or rent and arising out of "your product" or "your work" except (a) products that are still in your physical possession; or (b) work that has not yet been completed or abandoned.

And the umbrella policy defines "your product" as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by you"; "your work," is defined, in part, as "work or operations performed by you or on your behalf."

### 1.

The district court first considered whether the umbrella policy provides coverage for Orr's injuries under its excess liability coverage provision. The court correctly concluded that it does not: Because the umbrella policy provides that, as far as excess liability is concerned, the exclusions in the underlying insurance apply, the umbrella policy incorporates the exclusion in the primary commercial liability policy for injuries sustained as a result of liquor sales to a minor; and thus there is no excess liability coverage for Orr's injuries.

### 2.

In contrast to Federated's excess liability coverage obligation, however, its obligation for additional liability coverage under the umbrella policy is *not* subject to the exclusions in the underlying policies—including, therefore, the dram-shop liability exclusion in the commercial liability policy. Instead, as we indicated, the only applicable exclusions are specifically enumerated, and none applies here. Thus, as the district court properly recognized, the outcome-determinative question of policy interpretation is whether the injuries sustained by Orr, for which Catron owes damages, come within the umbrella policy's additional liability coverage for "products-completed operations hazard"§§*i.e.*, whether the accident and resulting injuries "aris[e] out of" the insured's "work" or "product" as those terms are defined in the policy.

### a.

The district court properly answered this question in favor of coverage. As a threshold matter, there is no dispute that Orr's personal injuries constitute the requisite "bodily injury" or that those injuries were sustained "away from premises" owned or rented by the insured. Nor is there any genuine dispute that the alcohol sold at the convenience store qualifies as "your product," which the policy defines to include "any goods or products . . . sold by" the insured. Similarly, the policy defines "your work" as "work or operations performed by you or on your behalf," thus plainly encompassing the sale of regularly-stocked products such as beer. And the injuries sustained by Orr "aris[e] out of" the sale of beer in typical but-for causation terms, as is the case with ordinary dram-shop liability.[4]

### b.

In fact, Federated does not dispute that the

---

[4] *Cf. Am. Guar. & Liab. Co.*, 129 F.3d at 807 ("The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'"); *id.* (noting that in the insurance context Mississippi law interprets the phrase "arising out of" to require a "causal connection" between the injuries alleged and the objects made subject to the phrase").

4

damages owed by Catron for Orr's injuries "aris[e] out of" the sale of the insured's product. Rather, Federated maintains that "[t]he mere fact that a claim can be said to 'arise out of' the sale of an insured's 'product' in terms of a but-for causation tort analysis, does not result in the application of 'Products Hazard' provision to afford the Claimant with a right of recovery in this case." Instead, Federated argues that the umbrella policy's grant of additional liability coverage for products-completed operation hazards should be read as granting coverage *only* for claims based on a defective products theory of liability; Federated cites various cases from jurisdictions other than Mississippi in support of this construction.[5]

---

[5] Like the district court, we find the cases cited by Federated from jurisdictions other than Mississippi to be of limited utility. First, though Federated is correct that courts in other jurisdictions indeed have adopted, in some form, the position it urges here, those courts have done so in the context of interpreting products-completed operations hazard *exclusions* (as opposed to an affirmative grant of coverage as is the case here) and thus were generally bound to construe the exclusions narrowly. *See, e.g.*, *Lessak v. Metro. Cas. Ins. Co.*, 151 N.E.2d 730, 735 (Ohio 1958); *Gen. Ins. Co. of Am. v. Crawford*, 635 S.W.2d 98, 102-03 (Tenn. 1982); *Farm Bureau Mut. Ins. Co. v. Lyon*, 528 S.W.2d 932, 937 (Ark. 1975).

Second, there is contrary authority from various other jurisdictions that squarely rejects the defective-products limitation as beyond the text of the typical products-completed operations hazard exclusions. *See, e.g.*, *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 5-6 & n.2 (1st Cir. 2000) (collecting cases); *Cobbins v. Gen. Accident Fire & Life Assurance Corp.*, 290 N.E.2d 873, 877 (Ill. 1972); *Hagen Supply Corp. v. Iowa Nat. Mut. Ins. Co.*, 331 F.2d 199, 200-04 (8th Cir. 1964).

In rejecting this contention, the district reasoned as follows:

While the terms of the "product-completed operations hazard" coverage is certainly broad enough to include strict liability claims based on the sale of defective products, the question is whether that coverage is restricted to claims based on that theory of liability. The coverage might certainly have contained such a limitation, but I see nothing in the terms of the policy itself that limits the operation of this provision to strict liability in tort for the sale of a defective product. As written, the "product completed operations hazard" affords coverage, up to the limits of the policy, for "those sums that insured becomes legally obligated to pay as damages," without regard to the theory of recovery upon which an injured party may rely.

We agree: Nothing in the terms of the umbrella policy limits its grant of additional liability coverage to claims based on a defective-products theory of recovery. To the contrary, the policy grants coverage in plain and unambiguous terms: "all bodily injury and property damage occurring away from pre-

---

Third, each court tasked with interpreting an insurance policy must consider the specific policy language at issue, and thus reported cases cited by litigants for general propositions often turn out to involve materially different policy language. *See Brazas*, 220 F.3d at 6. Thus, for example, although Federated relies heavily on *Scarborough v. N. Assurance Co. of Am.*, 718 F.3d 130 (5th Cir. 1983) (in which we held, applying Louisiana law, that a products hazard exclusion did not exclude coverage of a claim based on a negligent failure to warn theory), the specific exclusionary provision we construed included language directed squarely at defective products claims. *See id.* at 133.

5

mises you own or rent and arising out of 'your product' or 'your work.'"

Limiting this affirmative grant of coverage to injuries based on defective products would thus require importing terms into the policy that are plainly not there.[6] We reject Federated's invitation to do so, for it is fundamentally inconsistent with our duty faithfully to apply the governing principles of Mississippi contract law, first among them being the rule that the terms of an insurance policy "must be given their plain meaning and enforced *as written*." *Nethery*, 79 F.3d at 475 (citations omitted) (emphasis added).[7] Thus, although Federated may well have intended to limit its coverage obligation for additional liability to third-party claims based on a defective-products theory of recovery, the granting provision in the umbrella policy does not do so.

c.

Federated suggests that because Orr's damages claim is the type of claim the insured's liquor liability policy was "specifically designed to cover," coverage should not also be found under the additional liability coverage grant in the umbrella policy. But in the context of an umbrella insurance policy, the very purpose of which is to provide coverage *beyond* that provided by underlying insurance policies, it makes little sense to point to another policy that provides coverage as a reason for why there cannot be *additional* coverage under the plain terms of the umbrella policy.

In sum, the terms of the additional liability grant of coverage in the umbrella policy, when given their plain and ordinary meaning, do not admit of any limitation of coverage (and thus ultimately of indemnity) for claims based only on a defective-products theory of liability. Accordingly, the judgment is AFFIRMED.

---

[6] Federated practically admitted as much at oral argument when its counsel repeatedly admonished the panel not "slavishly [to] follow the text." *Cf. Brazas*, 220 F.3d at 6 ("[I]n order to limit the . . . exclusion provision to defective products, we would need to read into the text a requirement that is simply not there. . . . Where, as here, the language of the exclusion provision is unambiguous, the text should be given its plain meaning. In this case, the plain meaning of the exclusion is that it applies to all product-related injuries.").

[7] This is especially so where, as here, the insurer demonstrated elsewhere that it knew how to exclude the disputed damages if it so desired.