GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,

v.

Larry D. CRAWFORD, et al., Defendants-Appellants.

Supreme Court of Tennessee, at Nashville.

June 28, 1982.

Thomas F. Ventimiglia, Paris, T. J. Emison, Jr., Alamo, Fred McLean, Paris, for defendants-appellants.

Mac E. Robinson, Nashville, for plaintiff-appellee.

## OPINION

HARBISON, Chief Justice.

This action was brought by a liability insurance carrier seeking a declaratory judgment as to whether it was required to extend coverage and a defense to a negligence action against its insured, a retail liquor establishment. The plaintiff in the tort action alleged that employees of the liquor store had negligently sold alcoholic beverages to a minor. The latter allegedly became intoxicated and was involved in a serious vehicular accident, resulting in the death of the husband of the plaintiff in the tort action. Liability against the liquor store was asserted on a theory similar to that sustained by this Court in *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn.1981).

The policy held by the insured was designated on the cover as a "Business Protection Plan" for "Crawford Lakeway, Inc. DBA Lakeway Package Store." The business of the named insured was referred to as "Property Owner & Retail Liquor Store" beside which appeared the word "Mercantile". The policy was written through Balch & Reynolds Agency, Inc., in Paris, Tennessee.

In Section I of the policy there were provisions for fire and comprehensive insurance on the premises and inventory. That coverage is not involved in the present litigation. In Section II the policy provided "Blanket Liability Insurance" for both bodily injury and property damage "caused by an occurrence." "Occurrence" is defined in the policy as

"... an event including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured ...."

Significantly, coverage was not limited to injury resulting from "accident," a feature of many standard liability insurance policies. Testimony in the record indicated that the policy in question provided the broadest coverage furnished by the insurer, more extensive than that contained in its standard policy.

The insured did not purchase medical payments coverage for its premises or automobiles. It did purchase liability coverage for non-owned automobiles.

In the definitions section applicable to the liability coverage numerous hazards are referred to. Only two of these were excluded from coverage, these being the "completed operations hazard" and the "products hazard." The insurer relies upon these two exclusions to support its position that it did not afford coverage of the tort claim asserted against the insured. Both the trial court and the Court of Appeals sustained that position. We respectfully disagree and hold that coverage was afforded under the allegations of the complaint made against the insured.

In the "Definitions" section of the policy was contained the following:

" 'Alcoholic Beverage Hazard' means bodily injury or property damage for which the insured or his indemnitee may be held liable (a) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages ... by reason of the selling, serving or giving of any alcoholic beverage

(1) in violation of any statute, ordinance or regulation,

(2) to a minor,

(3) to a person under the influence of alcohol or

(4) which causes or contributes to the intoxication of any person ...."

There is no exclusion for this hazard, insofar as we can ascertain. Unless this hazard was included within one of the exclusions relied upon by the insurer, it appears to us to be covered under the "blanket liability insurance" described in the "Coverage Supplement." The latter document, immediately following the "declarations" pertaining to the liability coverage, defines that coverage except for automobiles. Automobile coverage was added by a separate endorsement. There are a number of printed exclusions to the liability coverage in the "Coverage Supplement" such as exclusions for injury to employees, loading and unloading of vehicles, war hazards and several others not relied upon here. None of the numerous hazards defined in the definitions section applicable to the liability coverage, however, was specifically excluded from the coverage except for completed operations and products, as above mentioned. These were excluded in the declarations and a special endorsement signed by the insured confirmed those exclusions from coverage.

It is conceded by the insured and by the tort claimants that had there been an express exclusion from coverage for the "Alcoholic Beverage Hazard," the carrier would have been entitled to a declaratory judgment that its policy did not cover the claim asserted in this case.[1] In the absence of such an exclusion, however, which was clearly known by the underwriting insurance carrier and specifically utilized by it when desired, appellants insist that the liability insurance provided by the policy applies to the tort claim asserted for negligent sale of alcohol to a minor.

The insurance carrier, on the other hand, insists that the "products hazard," also defined in the definitions section, is broad enough to exclude any coverage for the "Alcoholic Beverage Hazard." The products hazard, principally relied upon by the carrier in this case, is as follows:

" 'products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

Also in the definitions section is a paragraph defining the "named insured's products" as follows:

". . . goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold."

The question presented insofar as this exclusion is concerned is whether or not the tort claim was one "arising out of the named insured's products" within the meaning of the policy.

There is a substantial split of authority in the reported cases as to whether the negligent sale of a dangerous or restricted product is covered under a general liability policy or whether it is embraced within a "products hazard" exclusion. Most of the cases turn upon the specific policy language employed and upon the coverage purchased. For example, in cases where coverage is extended only for injury by "accident," rather than the broader coverage of injury by an "occurrence," the negligent or illegal sale in the course of business has sometimes been held not to constitute an "accident." For a collation of authorities see *Cobbins v. General Accident Fire & Life Assur. Corp., Ltd.,* 53 Ill.2d 285, 290 N.E.2d 873 (1972). In that case the insured had purchased limited liability coverage for accidents arising out of specific hazards defined in the policy. The only hazard for which coverage had

---

1. *Cf. United States Fidelity & Guaranty Co. v. Hazen,* 346 So.2d 632 (Fla.App.1977) (owner and operator of bar not insured for claim involving sale to intoxicated person where policy contained exclusion of the alcoholic beverage hazard).

been purchased was that dealing with the ownership, maintenance or use of the premises and operations necessary or incidental thereto. Coverage had not been purchased for goods or products manufactured or for operations if the accident occurred after such operations had been completed and took place away from the premises.

Under the policy the majority of the Illinois Supreme Court held that there was no coverage to a retail store which had illegally sold fireworks (sparklers) to a minor. The minor was later injured when he lighted the sparklers in his yard, and suit was brought on his behalf against the insured. The Court held that the definition of the products hazard, for which coverage had not been purchased, was sufficiently broad to cover

"... all product related injuries, including the sale of the wrong product or the wrongful sale of a product to a customer so long as the other requisites are also present." 290 N.E.2d at 877.

The Court also had difficulty in treating the negligent sale as an "accident" within the liability coverage.[2]

We have already noted that coverage in the present case is not limited to "accidents" but is broader. Further, as recognized by the Illinois Court, there is substantial authority to the effect that a "products hazard" exclusion pertains to that area of tort law known as "products liability," and that the intended policy reference is to some defect or imperfection in the product itself, or to some warranty or representation concerning the product. For example in *Farm Bureau Mutual Insurance Company of Arkansas v. Lyon*, 258 Ark. 802, 528 S.W.2d 932 (1975), the insured operated a sporting goods store. His employee sold to minors some gunpowder to be used in a sound-making device at football games. One of the minors was severely burned when the gunpowder exploded, and a suit was brought against the retail store for negligence in making the sale. As in the present case, the insurance carrier relied upon a products hazard exclusion, which was defined as follows:

"(1) The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured ...." 528 S.W.2d at 933.

The majority of the Arkansas Supreme Court held that in all probability the exclusion was drafted

"... to cover the ever broadening products liability field and has no application to the general insuring provision." 528 S.W.2d at 934.

The Court said:

"Appellee contends, and we agree, that this accident was the type for which he purchased coverage since the negligence which was the proximate cause of the accident occurred on premises insured under the terms of the policy." *Id.* at 935.

Among many other cases cited and discussed in that opinion was *Lessak v. Metropolitan Casualty Insurance Company of New York*, 168 Ohio St. 153, 151 N.E.2d 730 (1958). In that case an employee of a hardware store sold some BB shot to a minor in violation of state law. The minor was subsequently injured and a tort action was brought against the insured. The insurance carrier denied coverage, but again the carrier was held liable under the general insuring clause of the policy. The Court pointed out that there was no claim of any defect in connection with the product which was sold to the minor nor any claim of breach of warranty in the sale.[3]

This is the situation in the present case. There is no claim that the insured sold defective, improperly prepared or contami-

**2.** *See also Central Bearings Co. v. Wolverine Insurance Co.*, 179 N.W.2d 443 (Iowa 1970) (no coverage afforded to retail store for claim arising out of alleged defective cable).

**3.** *See also McGinnis v. Fidelity & Cas. Co. of N.Y.*, 276 Cal.App.2d 15, 80 Cal.Rptr. 482 (1969) (alleged negligence in sale of gunpowder to minors not within policy exclusions).

nated products, or that it sold products in cracked bottles or other types of defective containers which might injure a customer through explosion or breakage. The complaint against the insured is that it negligently and improperly sold alcoholic beverages to a minor in violation of state law. The claim arises out of this sale and not out of any defect or deficiency in the product itself. As we have already pointed out, under certain circumstances retail liquor establishments can be held liable for such sales when the customer becomes intoxicated and injures third persons. *See Brookins v. The Round Table, Inc., supra.*

■ We are of the opinion that the general "products hazard" exclusion relied upon by the carrier in the present case is not applicable and does not preclude coverage of a claim of a negligent or improper sale of the regular stock of goods or line of products sold by the insured retailer, when there is no claim of any defect or breach of warranty with respect to the products themselves. If the insurer wished to exclude coverage because of illegal sales in the regulated business of its insured, it had at hand a specific exclusion for that purpose which it sometimes employed but did not utilize with respect to the liability coverage invoked in the present case.

■ The same is true with respect to the other exclusion relied upon by the carrier, referred to as the "completed operations hazard." This hazard, excluded from all coverage in the policy, is referred to in the definition section as follows:

" 'Completed Operations Hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation of [*sic* —or?] warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the named insured under the contract have been completed

(b) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency but which were otherwise complete shall be deemed completed."

We believe that it would require a strained construction of this exclusion to apply it to the claim asserted against the insured here. It appears to be designed primarily for businesses that perform services or maintenance, such as contractors or subcontractors, particularly in its reference to a "portion of the work out of which the injury or damage arises" which "has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

If this provision excluded coverage for a negligent or illegal sale such as that allegedly made by the insured, the "blanket" liability coverage purchased in this case would afford very limited protection to a retail liquor dealer. Such an exclusion is frequently used in conjunction with a products hazard exclusion to preclude coverage of claims for "products liability." Also, coverage for completed operations is sometimes not purchased when the insured purchases insurance only for his immediate premises, but there is no evidence that the

insured in this case purchased anything other than the broadest coverage available.[4]

There is no testimony in the record concerning the actual underwriting involved. The policy was purchased from a local insurance agency, but no one from the agency testified. Both the agency and the insurance carrier knew the type of business conducted by the insured. One of the risks of liability which such a business can incur is in the area of illegal sales to minors or intoxicated persons or other violation of numerous statutes governing the sale of alcoholic beverages.

An official of the insured, which was incorporated, testified that he was an accountant and that he had purchased many kinds of insurance in the past. He said that there was no discussion between him and the underwriting agent with respect to the policy exclusions. He also testified that it was his intention in purchasing the blanket coverage "to have sufficient coverage for anything that I could be sued for or any legal liability that I have."

Under date of July 28, 1980, over four months after the insurance carrier filed the present suit, it sent to the insured, without explanation, certain endorsements to the policy, including an endorsement adding as an exclusion from coverage the "legal liquor hazard, alcoholic beverage hazard" in addition to the two hazards concerning products and completed operations previously in the policy. Mr. Crawford testified that there was no discussion with him concerning this endorsement, nor was he aware of any reason why it was added to the policy. Again, no agent of the insurer, either from the local agency or from the home office, testified with respect to this development.

The only witness offered by the carrier was a vice-president in charge of commercial insurance lines. He had no knowledge of the underwriting involved here. He testified that the company generally does not use both an alcoholic beverage exclusion and a products exclusion in the same policy. These are thought to overlap, according to him, and the products exclusion is considered to be the more general of the two. He said that:

"A products exclusion takes precedence and excludes all products of which alcohol is a product. Without the product exclusion on the policy our policy would provide alcoholic beverage coverage if there was no exclusion."

The witness did not explain, however, why the company later felt it necessary or appropriate to add an alcoholic beverage exclusion if the latter was already included in the products exclusion previously discussed. Further, although the insured in this case did not purchase premises medical coverage, policy provisions concerning that coverage are contained in the record. Significantly, the printed provisions of the "Coverage Supplement" dealing with premises medical liability contain all three exclusions—products, completed operations and alcoholic beverages. Seemingly the conduct of the company itself and the printed provisions of the medical premises section contradict the testimony of this witness and create substantial doubt as to whether in actuality the products hazard is intended to include the alcoholic beverage hazard and as to whether the exclusion of one also excludes the other. We are inclined to think that the witness is in error in this regard. The alcoholic beverage exclusion refers to illegal or improper sales or distribution, not to products as such.

The "Definitions" section of the policy lists and carefully defines a number of "hazards." Presumably an insured, in negotiations with the agent of the carrier, purchases coverage for some or all of these hazards. Those not covered are usually excluded specifically or are not listed in the declarations if only limited coverage is purchased, as in the *Cobbins* case, *supra*. Here

4. The insuring clause of the policy covers claims for bodily injury and property damage "caused by an occurrence." It does not limit coverage to an occurrence on the insured's premises or arising from operations conducted there as does the standard policy issued by the company.

the only exclusions mentioned in the declarations relate to products and completed operations. Since the "blanket" liability coverage was otherwise purchased, and since the definitions section included and defined the "alcoholic beverage hazard" as well as the two excluded hazards, to say the least a lack of clarity exists as to the underwriting involved and as to the policy provisions intended to be made applicable. There is no testimony as to the premium or rate structure for the various hazards, and no attempt has been made to reform the policy.

Since the declarations and endorsements did not contain an exclusion for the alcoholic beverage hazard at the time the tort claim in the present case arose, in our opinion, general coverage was afforded to the insured where not specifically excluded. Neither of the exclusions relied upon by carrier entitles it to withhold coverage and a defense of the tort action.

The judgments of the courts below are reversed and the cause is remanded to the trial court for entry of a judgment consistent herewith. All costs are taxed to appellee.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.