COLONY INSURANCE
COMPANY, Appellant,

v.

H.R.K., INC., d/b/a the Hock
Shop, Appellee.

No. 05–86–00276–CV.

Court of Appeals of Texas,
Dallas.

March 17, 1987.

Rehearing Denied April 28, 1987.

Marc A. Sheiness, Houston, for appellant.

James F. Boyle, Grand Prairie, for appellee.

Before DEVANY, McCLUNG and THOMAS, JJ.

THOMAS, Justice.

This is an appeal from a summary judgment rendered against Colony Insurance Company, hereinafter referred to as Colony. Colony filed an action seeking a judgment declaring that it had no duty to defend a wrongful death suit or provide coverage therein to H.R.K., Inc., d/b/a The Hock Shop, hereinafter referred to as H.R.K. H.R.K. filed a motion for summary judgment seeking to have the trial court declare that Colony was under a duty to defend. Colony filed its own motion for summary judgment asking the court to deny H.R.K.'s motion for summary judgment and to declare that there was no duty to defend or provide coverage. The trial judge granted summary judgment in favor of H.R.K. Because we agree that Colony owed a duty to defend as a matter of law, we affirm.

On May 28, 1983, Colony issued a "multi-peril comprehensive general liability insurance policy" to H.R.K. On or about July 15, 1983, Boyd Leslie Kyles allegedly committed suicide with a handgun purchased from H.R.K. A wrongful death action by the decedent's estate, hereinafter referred to as Kyles, ensued. As a result of this suit, H.R.K. requested Colony to honor its policy and defend the Kyles action. Colony undertook the defense pursuant to a reservation of rights letter.

■ Colony contends that the trial court erred because a proper construction of the "completed operations" and "product hazard" exclusions, together with the summary judgment evidence, established as a matter of law that it had no duty to defend. We hold that the allegations of the underlying wrongful death petition, when considered in the light of the policy provisions, establish as a matter of law that Colony has a duty to defend H.R.K.

The Kyles petition alleges that H.R.K. is strictly liable pursuant to the Restatement (Second) of Torts § 402(a) (1965) and also because H.R.K. was engaged in ultrahazardous activity. Additionally, the Kyles petition alleges H.R.K. was negligent in the sale of the weapon in that, inter alia, it sold a pistol to Kyles when it knew, or should have known, that Kyles was mentally unstable and posed a threat to himself or others.

The general coverage provision of the policy in question states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies caused by an occurrence, and the Company shall defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The "Completed Operations and Products Hazard Exclusion" relied upon by Colony states:

> It is understood and agreed that insurance does not apply to bodily injury or property damage included with the completed operations hazard or product hazard of the policy.

In the definition of "completed operations hazard," the insurance policy states:

> "Completed Operations Hazard" includes bodily injury or property damage arising out of operations or reliance upon a representation or a warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from the premises owned by or rented to the named insured.

> "Operations" includes materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

> 1) When all the operations to be performed by or on behalf of the named insured under the contract have been completed.

> 2) when all operations to be completed by or on behalf of the named insured

at the site of the operations have been completed, or

> 3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaging in performing operations for a principal as part of the same project.

■ While the obligation to defend an action against an insured is broader than the obligation to pay, an insurance carrier cannot be called on to furnish a defense for the insured unless the third party's claim against the insured is shown to be within coverage provisions of the policy. In determining the duty of a liability insurance company to defend a lawsuit brought against the insured, the allegations of the complainant should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations, and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof. *Argonaut Southwest Insurance Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973).

■ Further, in considering the allegations in the complainant's petition to determine whether they fall within the provisions of the insurance policy, a liberal interpretation of the meaning of those allegations should be indulged. *Heyden Newport Chemical Corp. v. Southern General Insurance Co.,* 387 S.W.2d 22, 26 (Tex. 1965); and *Norvell Wilder Supply v. Employers Casualty Co.,* 640 S.W.2d 338, 340 (Tex.App.—Beaumont 1982, no writ). Even where the injured person's complaint does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend if there is potentially a case under the complaint within the coverage of the policy. *Fort Worth Lloyds v. Garza,* 527 S.W.2d 195, 199 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); and *St. Paul Insurance Co. v. Rahn,* 641 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1982, no writ). Any doubts in that regard will be resolved in the insured's favor. *Heyden, supra.*

■ We hold that the "completed operations clause" does not apply to the instant case. There are no Texas cases directly on point with the facts of this case in addressing the application or interpretation of the "completed operations" exclusion. Thus, to that extent, this is a case of first impression.

In examining the law of other jurisdictions, we find authority supporting the view that the "completed operations" exclusion does not apply in cases in which the damage or injury arises in connection with the sale or distribution of a product by an insured. *See Cooling v. United States Fidelity & Guaranty Co.*, 269 So.2d 294, 297, (La.App.1972), *cert. den.* 272 So.2d 373 (La. 1973); *American Trailer Service, Inc. v. Home Insurance Co.*, 361 N.W.2d 918, 920 (Minn.App.1985); *ADA Resources, Inc. v. Don Chamblin & Associates, Inc.*, 361 So.2d 1339, 1343 (La.App.1978); and *General Insurance Co. of America v. Crawford*, 635 S.W.2d 98, 101 (Tenn.1982).

The facts alleged by Kyles clearly pose the type of general risk in doing business which prompted H.R.K. to buy comprehensive liability insurance. If this provision excluded coverage for a negligent sale such as that allegedly made by H.R.K., the liability coverage purchased would afford very limited protection to a dealer in the sale of goods such as H.R.K.

We agree with the following language stated in *General Insurance Co. v. Crawford*, 635 S.W.2d 99, 102 (Tenn.1982):

It [completed operations exclusion] appears to be designed primarily for businesses that perform services or maintenance, such as contractors or subcontractors, particularly in its reference to a "portion of the work out of which the injury or damage arises" which "has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project."

Consequently, we hold that the "completed operations" exclusion does not apply to this case.

■ We further hold that the "products hazard" exclusion does not apply in this case. The "Products Hazard" is defined as follows:

"Products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products have been relinquished to others.

In general, the "products hazard" exclusion applies only if the injury is caused by a "defective product". *Gordon Yates Building Supplies, Inc. v. Fidelity and Casualty Co. of New York*, 543 S.W.2d 709, 714 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Lessak v. Metropolitan Casualty Ins. Co. of New York*, 168 Ohio St. 153, 151 N.E.2d 730, 735 (1958); and *Cooling v. United States Fidelity & Guaranty Co.*, 269 So.2d 294 (La.App. 3 Cir.1972) *cert. denied* 270 So.2d 373 (1973).

There are no allegations in the damage petition that the product was defective. The Kyles petition alleges negligent acts on the part of H.R.K. rather than the sale of a defective pistol, and therefore the products hazard exclusion does not deny coverage to those claims.

Finally, H.R.K. contends that Colony is precluded from bringing this action until the conclusion of the underlying wrongful death suit because the reservation of rights letter sent by Colony to H.R.K. prior to the filing of this action failed to specifically reserve the right to bring a declaratory judgment suit. In support of this contention, H.R.K. cites *Ranger v. Mustang Aviation, Inc.*, 533 S.W.2d 903, 906 (Tex.Civ. App.—Eastland, 1976, writ ref'd n.r.e.). However, *Ranger* does not purport to lay down a rule of contract law for the construction of reservation of rights letters, nor a rule of insurance law prescribing the minimum contents of such a letter. Instead, *Ranger* decided whether or not a justiciable controversy, sufficient to create

jurisdiction under the declaratory judgment act, had arisen. The court merely held that where the insurance company had specifically reserved the right to bring a declaratory judgment suit, the trial court had a justiciable controversy before it and the suit was not moot.

Clearly, there was a justiciable controversy before the trial court in this case without a specific reservation of the right to bring a declaratory judgment action. Both the duty to defend and the duty to provide coverage are valuable to the insured and expensive to the insurer. Since, to the extent a declaratory judgment decides that the insurer owes no duty to defend, the insured will be deprived of value and the insurer relieved of expense, a justiciable controversy was before the trial court. A reservation of rights letter need not specifically reserve the right to bring a declaratory judgment action in order for the insurer to avail itself of this remedy.

Consequently, we overrule Colony's points of error and affirm the judgment of the trial court.