PRO–TECH COATINGS, INC., Appellant,

v.

UNION STANDARD INSURANCE COMPANY and Union Standard Lloyds, Appellees.

No. 05–93–01882–CV.

Court of Appeals of Texas, Dallas.

March 31, 1995.

Craig L. Reese, Gregory N. Woods, Liles, Hartley, Jensen & Woods, Fort Worth, for appellant.

Kenneth R. Stein, Matthews Carlton & Stein, Dallas, for appellees.

Before LAGARDE, CHAPMAN and MORRIS, JJ.

## OPINION

LAGARDE, Justice.

Two insurance companies, Union Standard Insurance Company (Standard) and Union Standard Lloyds (Lloyds), sued their insured, Pro–Tech Coatings, Inc. (Pro–Tech), for a declaratory judgment that neither insurance company had a duty to defend Pro–Tech in two personal injury suits pending against Pro–Tech. The trial court granted Standard and Lloyds's motion for summary judgment, declared that neither had a duty to defend Pro–Tech and awarded Standard and Lloyds their attorneys' fees. We reverse the declaratory judgment portion of the trial court's judgment and render judgment that Standard and Lloyds have a duty to defend Pro–Tech. We affirm the award of Standard and Lloyds's attorneys' fees.

## BACKGROUND

Pro–Tech manufactures and sells various coating products. Charles H. Adams and other plaintiffs sued Pro–Tech and other defendants in the 58th Judicial District Court in Jefferson County, Texas (the Adams suit). R.T. Burgess and other plaintiffs sued Pro–Tech and other defendants in the 136th Judicial District Court in Jefferson County, Texas (the Burgess suit). The plaintiffs in these two suits alleged that they were employed with Lufkin Industries, Texas Foundry, or Champion Paper Mill, all located in Lufkin, Texas, for various periods, during which they were exposed to products containing asbestos and silica, as well as other toxic dust, fumes, and vapors. Although the transcript contains copies of the Adams and Burgess petitions and amended petitions, it is not clear what the link is between Pro–Tech and the three companies in Lufkin, Texas. However, it would appear that products manufactured by Pro–Tech ended up in the three companies in Lufkin, Texas, where the Adams and Burgess plaintiffs were exposed to them and allegedly injured by them. The plaintiffs allege that they now have industrial dust diseases and have sued Pro–Tech for negligence, strict product liability, breach of warranties, and gross negligence.[1]

Pro–Tech purchased from Standard a commercial general liability insurance policy, ef-

---

1. Some of the plaintiffs are widows of deceased former employees of one or more of the named companies in Lufkin, Texas. These plaintiffs

fective from October 27, 1987, through October 27, 1990. Pro–Tech also purchased from Lloyds a commercial general liability insurance policy, effective from October 27, 1989, through October 27, 1990. When the Adams and Burgess suits were brought against Pro–Tech, Pro–Tech asked Standard and Lloyds to defend it. Standard and Lloyds each sued Pro–Tech seeking a declaratory judgment that it had no duty to defend Pro–Tech under its respective policy. Pro–Tech filed a counterclaim seeking a declaratory judgment that Standard and Lloyds had duties to defend Pro–Tech under their respective policies.

Standard and Lloyds filed a motion for summary judgment that they had no duty to defend Pro–Tech. Pro–Tech filed a motion for summary judgment that Standard and Lloyds had a duty to defend Pro–Tech. The trial court granted Standard and Lloyds's motion, declared that they had no duty to defend Pro–Tech, and awarded Standard and Lloyds their attorneys' fees. The trial court denied Pro–Tech's motion and ordered that Pro–Tech take nothing on its counterclaim.[2]

## THE DUTY TO DEFEND

In point of error three, Pro–Tech argues that the trial court erred in granting Standard and Lloyds's motion for summary judgment because Standard and Lloyds did not meet their burden of showing that the causes of action alleged in the Adams and Burgess suits were not covered by Standard's and Lloyds's policies. Standard and Lloyds respond that (1) the Adams and Burgess suits did not allege causes of action that fell within the areas of coverage identified in their respective policies and (2) to the extent the Adams and Burgess suits alleged causes of action that fell within the areas of coverage identified in their respective policies, the Adams and Burgess suits fell within the pollution exclusion clause and, in the case of Lloyds, the asbestos exclusion clause, and were, therefore, excluded from coverage.

The duty of an insurer to defend depends upon the factual allegations in the petition. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 636 (Tex.1973). The truth or falsity of those allegations is not a factor; similarly, what the parties know or believe to be the true facts is not a factor. *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ). When determining a duty to defend, courts should examine only the allegations in the petition and the provisions of the insurance policy; "[t]he duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd w.o.j.). When reviewing the allegations in the petition to determine whether they fall within the provisions of the insurance policy, courts liberally interpret the meaning of those allegations in the insured's favor. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965). "Even where the injured person's complaint does not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend if there is potentially a case under the complaint within the coverage of the policy." *Colony Ins. Co.,* 728 S.W.2d at 850. However, if the petition alleges only facts excluded by the policy, the insurer is not required to defend. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982).

Both the Standard policy and the Lloyds policy provide three areas of coverage. Both policies identify these three areas as:

Coverage A. Bodily Injury and Property Damage Liability

Coverage B. Personal and Advertising Injury Liability

Coverage C. Medical Payments

If we determine that any one of these three areas of coverage applies and that the cover-

---

sued for loss of consortium and other losses occasioned by their husbands' injuries.

2. The trial court's judgment recites that "upon trial of such issue," Standard and Lloyds's attorneys' fees were liquidated.

age is not otherwise excluded, we will sustain Pro–Tech's third point of error. *See Maryland Cas. Co. v. Moritz,* 138 S.W.2d 1095, 1097–98 (Tex.Civ.App.—Austin 1940, writ ref'd). For the reasons discussed below, we hold that Coverage A applies and is not otherwise excluded; accordingly, we sustain point of error three.

In their motion for summary judgment and in this Court, Standard and Lloyds argue that they have no duty to defend Pro–Tech under Coverage A for multiple reasons. We consider each argument in turn.

Standard and Lloyds argue that neither the Adams suit nor the Burgess suit alleged "property damage." They conclude that there is no coverage, unless there is coverage for "bodily injury."

The Standard policy provides, in pertinent part:

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... We will have the right and duty to defend any "suit" seeking those damages....

The Standard policy then provides a list of exclusions.

The Lloyds policy provides, in pertinent part:

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

The Lloyds policy then provides a list of exclusions.

These policies cover "bodily injury" *or* "property damage." Accordingly, the plaintiffs in the Adams and Burgess suits were not required to plead both "bodily injury" and "property damage" before coverage applied. The plaintiffs in the Adams and Burgess suits alleged "bodily injury," which, under the terms of the policies, was sufficient to invoke coverage, absent an exclusion. Standard and Lloyds's first argument has no merit.

Standard and Lloyds argue that not all of the plaintiffs in the Adams and Burgess suits were allegedly injured during the terms of the policies. Because the policies require the injury to occur during the policies' terms, Standard and Lloyds maintain there is no coverage.

The Standard policy provides, in pertinent part: "This insurance applies only to 'bodily injury' and 'property damage' which occurs during the policy period." The policy period of the Standard policy was from October 27, 1987 to October 27, 1990. The Lloyds policy provides, in pertinent part, "This insurance applies to 'bodily injury' and 'property damage' only if: (1) ... and (2) The 'bodily injury' or 'property damage' occurs during the policy period." The policy period of the Lloyds policy was from October 27, 1989 to October 27, 1990.

Both Standard and Lloyds admit that some, but not all, of the plaintiffs in both the Adams and the Burgess suits claim injuries that allegedly occurred during the respective policy periods. Standard and Lloyds both argue that as to those plaintiffs who did not allege injuries that occurred during the respective policy periods, there is no coverage. The trial court, however, did not make this distinction. The trial court ruled that Standard and Lloyds had no duty to defend any of the plaintiffs' suits in both the Adams and Burgess actions. Without deciding whether some of the plaintiffs were outside the policy period, absent an exclusion clause, as long as there was one plaintiff whose claims came within Pro–Tech's coverage, the trial court erred in ruling that Standard and Lloyds had

no duty whatsoever to defend. *Maryland Cas. Co.*, 138 S.W.2d at 1097–98.

■ Standard and Lloyds argue that the pollution exclusion clauses in their policies exclude any coverage. Both argue that "at least" subsection 1(d) of the pollution exclusion clauses of both policies apply. The Standard and Lloyds policies contain similar pollution exclusion clauses.

Standard's pollution exclusion clause provides:

2. **Exclusions.**

This insurance does not apply to:

.     .     .     .     .

**f.** (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises you own, rent or occupy;

(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i) if the pollutants are brought on or to the site or location in connection with such operations; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The Standard policy has an endorsement that amended the pollution exclusion clause as follows: "Subparagraphs (a) and (d)(i) of paragraph (1) of this exclusion do not apply to 'bodily injury' or 'property damage' caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be."

Lloyds's pollution exclusion clause provides:

2. **Exclusions.**

This insurance does not apply to:

.     .     .     .     .

**f.** (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in con-

nection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The Adams and Burgess petitions do not allege that (1) Pro–Tech owned, rented, or occupied any location in Lufkin; (2) their injuries occurred at a location used by Pro–Tech, for Pro–Tech, or others for the handling, storage, disposal or treatment of waste; or (3) the pollutants were at any time transported, handled, stored, treated, disposed of, or processed as waste by Pro–Tech or for Pro–Tech or any person or organization for which Pro–Tech was legally responsible. Therefore, assuming, without deciding, that the plaintiffs in the Adams and Burgess

suits were injured by pollutants, subsections (1)(a), (1)(b), and (1)(c) of the pollution exclusion clause do not preclude coverage.

Standard and Lloyds, both in their motion for summary judgment and in their brief on appeal, assert that subsection (1)(d) excludes coverage. Standard and Lloyds maintain that Pro–Tech, Pro–Tech's contractors, or Pro–Tech's subcontractors performed operations at the Lufkin companies. Standard and Lloyds concede that "operations" is not defined in their policies. Standard and Lloyds assert that Pro–Tech's "operations" were the sale and delivery of its products to businesses in Lufkin. Standard and Lloyds further contend that the companies that delivered Pro–Tech's products were Pro–Tech's contractors or subcontractors.

When language of an insurance policy is subject to two or more reasonable constructions, courts construe the language that affords coverage. *See Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984). When construing exclusionary clauses, courts must adopt the insured's construction as long as that construction is not itself unreasonable, even if the insurer's construction appears to be more reasonable or to more accurately reflect the parties' intent. *See Kelly Assocs., Ltd.,* 681 S.W.2d at 596.

Assuming, without deciding, that Standard and Lloyds's construction of "operations" is *a* reasonable construction, it is not *the only* reasonable construction. Pro–Tech contends that nothing in the Adams and Burgess petitions suggests that Pro–Tech or anyone on Pro–Tech's behalf was performing "operations" of any kind. The Adams and Burgess petitions suggest that Pro–Tech products ended up at various businesses in Lufkin, Texas, where the Adams and Burgess plaintiffs were exposed to and allegedly injured by them. This liberal interpretation of the Adams and Burgess petitions does not suggest that Pro–Tech or anyone on Pro–Tech's behalf was performing "operations" at those locations in Lufkin. *See Heyden Newport Chem. Corp.,* 387 S.W.2d at 26. We hold

that subsection (1)(d) of the pollution exclusion clause does not preclude coverage.

■ Standard and Lloyds argue that Pro–Tech has judicially admitted that some parts of subsections (1)(a), (b), (c), and (d) of the pollution exclusion clauses apply because Pro–Tech has argued in its brief that both Standard's and Lloyds's policies provide coverage for medical payments under Coverage C. Standard's policy provides, in relevant part:

COVERAGE C. MEDICAL PAYMENTS

1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations; ...

Lloyds's policy contains the identical provision. Standard and Lloyds argue that the very elements that provide coverage for medical payments act to negate coverage under the pollution exclusion clause. Standard and Lloyds conclude that Pro–Tech cannot argue coverage under Coverage C without excluding coverage under the pollution exclusion clause.

The Texas Rules of Civil Procedure allow for pleading in the alternative. TEX.R.CIV.P. 48. "A party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both." TEX.R.CIV.P. 48. Notwithstanding Pro–Tech's arguments in its appellate brief, we hold that Pro–Tech has not judicially admitted that injuries allegedly suffered by the plaintiffs in the Adams and Burgess suits occurred on Pro–Tech's premises, on ways next to Pro–Tech's premises, or by virtue of Pro–Tech's operations. Standard and Lloyds filed a suit against Pro–Tech for a declaration that there was no coverage under Coverages A, B, or C of the Standard and Lloyds policies, and Pro–Tech responded that there was coverage. To the extent that Pro–Tech's response was internally inconsistent, we hold that Pro–Tech was entitled to argue inconsistently. *See* TEX.R.CIV.P. 48.

Subsection (2) of the pollution exclusion clause does not deal with bodily injuries. It deals generally with losses incurred in cleanup efforts. The Adams and Burgess petitions do not allege any losses of this sort. Subsection (2) does not preclude coverage.

■ Lloyds argues that its policy, in an amendatory endorsement, also contains an asbestos exclusion clause, which provides in its entirety:

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising in whole or in part, either directly or indirectly out of asbestos whether or not the asbestos is:

a. Airborne as a fiber or particle;

b. Contained in a product;

c. Carried or transmitted on clothing or by any other means; or

d. Contained in or a part of[:]

(1) any building;

(2) any building material;

(3) any insulation product; or

(4) any component part of any building, building material or insulation product.

2. The investigation, settlement or defense of any claim, "suit" or proceeding against the insured alleging any actual or threatened injury or damage which arises out of or would not have occurred but for asbestos, as described above.

Lloyds contends that this exclusion clause precludes coverage.

■ Pro–Tech argues that the Adams and Burgess petitions allege injuries not only from asbestos, but from silica and toxic dust, fumes, and vapors as well. Pro–Tech maintains that to the extent the Adams and Bur-

gess plaintiffs have sued Pro–Tech for injuries sustained from silica and toxic dust, fumes, and vapors, Lloyds is still obligated to defend under Coverage A and said duty to defend is not excused because the Adams and Burgess plaintiffs have also alleged injuries caused by asbestos. We agree.[3] The issue is not whether the petitions allege any claims that are excluded under the policy, but whether the petitions allege any claims that fall within the policy. *See Maryland Cas. Co.*, 138 S.W.2d at 1097–98. If there are any claims that come within the terms of the policy, Lloyds must defend the suit. *Maryland Cas. Co.*, 138 S.W.2d at 1097–98. Because the Adams and Burgess petitions allege more than just asbestos-related injuries, we hold that the asbestos exclusion clause does not preclude coverage.

After reviewing all of Standard and Lloyds's arguments, we hold that the Adams and Burgess suits fall within Coverage A and that the pollution exclusion clauses in Standard's and Lloyds's policies and the asbestos exclusion clause in Lloyds's policy do not exclude coverage. Standard and Lloyds's remaining arguments address whether Pro–Tech has any coverage under Coverages B and C. Because we have determined that Standard's and Lloyds's policies afford Pro–Tech coverage under Coverage A, we need not determine whether Coverage B or Coverage C applies. It is sufficient that Standard and Lloyds have a duty to defend under Coverage A. Standard and Lloyds do not argue that Pro–Tech must establish coverage under Coverage A, Coverage B, *and* Coverage C before Standard and Lloyds have a duty to defend. Nor do we read their policies in that manner. We sustain Pro–Tech's third point of error.

## PRO–TECH'S MOTION FOR SUMMARY JUDGMENT

In point of error five, Pro–Tech argues that the trial court erred in denying Pro–Tech's motion for summary judgment be-

cause Pro–Tech was entitled to a summary judgment as a matter of law. Because the Adams and Burgess suits alleged causes of action within Standard's and Lloyds's coverage and not within any exclusion clauses, Pro–Tech asserts that it was entitled to a summary judgment declaring that Standard and Lloyds have duties to defend Pro–Tech in the Adams and Burgess suits. Standard and Lloyds respond that Pro–Tech's coverage is excluded under the pollution exclusion clauses.

When both the plaintiff and the defendant move for summary judgment and the trial court grants one motion and denies the other, appellate courts may review the denial provided the appealing party complains about both the order granting the opponent's motion and the order denying its own motion. *Shade v. City of Dallas*, 819 S.W.2d 578, 584 (Tex.App.—Dallas 1991, no writ). Pro–Tech has met these procedural requirements.

We have already determined, under point of error three, that the pollution exclusion clauses do not preclude coverage. Standard and Lloyds do not argue that there are any disputed issues of fact. There is only an issue of law. Because we have already determined that Coverage A under both the Standard policy and the Lloyds policy applies and that Pro–Tech's coverage is not within any exclusion clause, we sustain Pro–Tech's fifth point of error. TEX.R.CIV.P. 166a(c).

Pro–Tech's first, second, and fourth points of error focus upon whether Standard and Lloyds have a duty to defend Pro–Tech. Our holdings on Pro–Tech's third and fifth points of error dispose of that issue. Accordingly, we do not separately address Pro–Tech's first, second, or fourth points of error.

## DISPOSITION

In its prayer, Pro–Tech states:

For all the reasons stated in this brief, [Pro–Tech] asks this Court to reverse the

---

**3.** If the claimed injuries were allegedly caused only by asbestos, the asbestos exclusion would appear to apply. *See Maryland Cas. Co.*, 138 S.W.2d at 1097.

judgment of the trial court and render judgment for [Pro–Tech], remanding solely for a hearing on the issue of reasonable and necessary attorney's fees to which [Pro–Tech] is entitled. Alternatively, [Pro–Tech] asks this Court to reverse the judgment of the trial court and remand this case for trial on the merits.

The summary judgment in this appeal is composed of two portions: (1) the declaratory judgment and (2) the award of Standard and Lloyds's attorneys' fees.

As for the declaratory judgment, by virtue of our sustaining Pro–Tech's third point of error, we reverse the trial court's judgment declaring that Standard and Lloyds have no duty to defend Pro–Tech. By virtue of our sustaining Pro–Tech's fifth point of error, we render judgment that Standard and Lloyds both have a duty to defend Pro–Tech.

As for the attorneys' fees, none of Pro–Tech's five points of error attack the trial court's award of Standard and Lloyds's attorneys' fees against Pro–Tech or the trial court's failure to award Pro–Tech its attorneys' fees. In a declaratory judgment action, attorneys' fees can be awarded to either party. *See District Judges v. Commissioners Court,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Before this Court reverses a trial court's judgment on attorney's fees in this procedural posture, it is incumbent upon an appellant to complain about the adverse award in one point of error, to complain about the trial court's failure to award attorneys' fees in a second point of error, to properly brief both points of error, and to show reversible error. Pro–Tech has done none of the above. Accordingly, we affirm the trial court's disposition of attorneys' fees.