**BRAZAS SPORTING ARMS, INC., Plaintiff,**

v.

**AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Defendant.**

**No. CIV.A. 97–30186–MAP.**

United States District Court, D. Massachusetts.

July 30, 1999.

---

John G. Bagley, Diane C. Fernald, Egan, Flanagan & Cohen, PC, Springfield, MA, for Brazas Sporting Arms, Inc., Plaintiff.

James F. Kavanaugh, Jr., Cintra S. Shober, Jennifer A. Hayes, Conn, Kavanaugh,

Rosenthal, Peisch & Ford, Boston, MA, for American Empire Surplus Lines Insurance Company, Defendant.

## MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### (Docket Nos. 24 & 30)

PONSOR, District Judge.

Brazas Sporting Arms, Inc. ("Brazas") is a wholesale distributor of firearms located in Monson, Massachusetts. Between the year 1992 and 1997 the defendant American Empire Surplus Lines Insurance Company ("American") sold three identical "commercial general liability" insurance policies to Brazas.

All of these policies contained an exclusion covering a so-called "products" hazard. This provision excluded coverage for "all bodily injury and property damage occurring away from premises you own or rent and arising out of 'your product' or 'your work' . . . ." "Your product" was defined to mean "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by 'you' ". Exhibit C to Plaintiff's Memorandum in Support of Its Motion for Partial Summary Judgment (Dkt. No. 31) at (hand-numbered) 12–13.

In 1995, Brazas learned it was named as a defendant in litigation pending in the United States District Court for the Eastern District of New York. The New York cases featured numerous individual plaintiffs seeking compensation for injuries or deaths resulting from shootings by persons employing illegally owned handguns. The lawsuits asserted claims against some sixty manufacturers and dealers of handguns, including Brazas, as well as several industry trade groups. In essence, the New York plaintiffs contended that the defendants as a group negligently, willfully, knowingly and recklessly overproduced,

marketed and distributed handguns in excess of the demand that might reasonably be expected from legitimate consumers, when they knew or should have known that the surplus of the overproduction would enter into the illegal firearms market. The lawsuits did not identify any particular guns sold by Brazas as the cause of injury to any particular plaintiffs. The focus of the lawsuit was the contribution by Brazas and others to the market overflow.

One of the cases in the Eastern District of New York (*Hamilton v. Accu–Tek*) was recently completed, and the claim against Brazas was dismissed at the close of the evidence. Brazas alleges that it incurred $19,000 in fees and expenses defending the *Hamilton* case. Other litigation naming Brazas is still pending.

Upon demand from Brazas, American denied coverage and declined to defend any of the New York litigation or to indemnify Brazas if damages were awarded against it. In response, Brazas filed a complaint for declaratory judgment in this court, seeking a declaration that American has a duty to defend and indemnify Brazas, and also asserting claims for breach of contract and violation of Mass. Gen. Laws ch. 93A.

American has filed a Motion for Summary Judgment, arguing (among other things) that the "product" exclusion in its policies fully justifies its decision to deny both defense and indemnification, as a matter of law. Brazas has filed a cross-motion for summary judgment seeking a declaration that the policies issued by American require, at a minimum, that American defend the New York litigation.

Despite vigorous and resourceful arguments by plaintiff's counsel, this court must conclude that the plain language of the "product" exclusion relieves American of any obligation to defend in the New York litigation or to indemnify Brazas if judgment enters against it.

The product exclusion may be invoked if two conditions are satisfied: if the bodily injury occurs away from premises owned or rented by Brazas, and if the bodily injury arises out of a product manufactured, sold or distributed by Brazas.

Both parties agree that the quoted language makes it clear that the policies in question cover "general liability" not "product liability." Thus, it is not disputed that if Brazas distributed a firearm that later, due to the defect, caused an injury, the policies issued by American would not protect Brazas. Defendant takes the position that the exclusion covers injuries arising from its products, off premises, regardless of the circumstances.

Plaintiff offers two reasons why, despite its plain words, the exclusion should not bar coverage.

■ First, plaintiff argues that the exclusion only extends to an injury caused by a defective product. It is true that some scant authority exists for this proposition outside this Circuit. *See, e.g., Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 851 (Tex.Ct.App.1987); *Lessak v. Metropolitan Cas. Ins. Co. of New York,* 168 Ohio St. 153, 151 N.E.2d 730 (1958). A number of New York appellate cases take the opposite position, holding that a defect is not necessary. *See Rhinebeck Bicycle Shop, Inc. v. Sterling Ins. Co.,* 151 A.D.2d 122, 546 N.Y.S.2d 499, 502 (N.Y.App.Div.1989); *New York Cas. Ins. Co. v. Halley Electric Co., Inc.,* 148 A.D.2d 967, 539 N.Y.S.2d 204, 205 (N.Y.App.Div.1989); *Pennsylvania General Ins. Co. v. Kielon,* 112 A.D.2d 709, 492 N.Y.S.2d 502, 503 (N.Y.App.Div. 1985). The latter line of authority is more persuasive.

■ To fabricate out of thin air a requirement that a product be defective before the product exclusion will apply, when not one word in the policy supports such an inference, would not only be arbitrary and unfair, it would fly in the teeth of well-established Massachusetts law. The Massachusetts Supreme Judicial Court has

stated that the interpretation of insurance contract "is not different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 280, 675 N.E.2d 1161 (1997). A court is not free to embark on its own revisions of clear policy language. *Continental Cas. Co. v. Gilbane Bldg. Co.,* 391 Mass. 143, 147, 461 N.E.2d 209 (1984).

Counsel's argument that the court should keep in mind the purpose of the insurance and the parties' reasonable expectation has some force, but is ultimately unpersuasive. Here, the plaintiff purchased a relatively inexpensive basic general liability policy, making the decision not to purchase product liability insurance, which was available at a greater cost. Typically, such a general liability policy would cover a slip and fall or an injury from a collapsing cabinet. To the extent that the court should consider expectations regarding, or purposes of, the insurance, this factor appears to cut in favor of American.

 Alternatively, plaintiff argues that the New York litigation was not directed at Brazas products, but at its general manner of doing business. Again, while the argument is imaginative, it loses force upon reflection. The New York litigation charges Brazas with participating in an intentional or reckless course of distribution of its products with resulting injury. Only by a distortion of language and logic can plaintiff suggest that the injuries sued upon do not "arise from" the distribution of Brazas products, off Brazas premises.

In sum, despite counsel's efforts, the "products" hazard exclusion remains as a boulder in the flow of argument too large to avoid. For this reason, defendant's Motion for Summary Judgment will be allowed.[1] Plaintiff's Motion for Partial Summary Judgment will be denied. The clerk will enter judgment for defendant, both on the complaint, and on its counterclaim, except that no fees will be awarded.

---

1. Defendant offered other arguments in support of summary judgment, which it is not necessary for the court to address.